Werges vs. Railroad Company.

## No. 8010.

## MRS. S. D. A. WERGES VS. THE ST. LOUIS, CHICAGO & NEW ORLEANS RAILROAD COMPANY.

In an action for damages alleged to have been caused to plaintiff's property by the running of a railroad company's trains, which are alleged to injure his property and to be a nuisance, by jarring and shaking his house, by making insupportable noises and emitting noxious smells and smoke, prescription cannot avail as a means of defense, because the acts charged are continuous, and because the causes and effects are renewed *de die in diem.*

When the petition charges that the defendant is doing certain acts, such as running trains through certain streets of a city, without warrant of law or sanction of authority, the defendant, under the plea of general denial, will be allowed to introduce in evidence private acts of the legislature and city ordinances purporting to authorize the acts complained of. As such acts are introduced for the purpose of rebutting the assertion of illegality, they need not be specially pleaded.

The legislature has the power to authorize the building of a railroad, using steam engines on a street of a city, provided the road be so constructed as not to exclude the public from any part of the street.

A railroad company which has laid a track on a street in a city, and runs steam trains thereon, under such authority, and with a substantial compliance with city ordinances regulating such use of the street, is entitled to the protection of the law which exonerates a party in pursuit of a legal right from any responsibility for damages, not shown to have resulted from his gross carelessness or culpable negligence.

Contraventions of city ordinances by the railroad company cannot be a cause of action by private parties, unless they allege and show damages resulting therefrom. The power to correct such abuses is vested in the city under its police power.

In an action for damages, the nuisance charged must be proved to be the legitimate result of the alleged cause, and not the result of other artificial causes.

In case of doubt the benefit thereof must be given to the defendant, if his trade is a lawful one.

APPEAL from the Sixth District Court for the Parish of Orleans. *Eighter*, J.

---

*Tucker & Kellogg, R. J. Ker* and *A. A. Ker* for Plaintiff and Appellee:

1. The general denial and plea of confession and avoidance are inconsistent defenses. 28 An. 109, 239; 31 An. 84; C. P. 419, 420.

2. The charter of a railroad company is a special law. It is a private statute requiring plea and proof to be noticed judicially. 33 An. 956.

3. An answer cannot be amended after the plaintiff has closed his evidence; nor after defendant has gone to trial. 14 An. 355; 19 L. 547-8; 22 An. 350-1, and cases cited in brief; C. P. 419, 420.

4. The courts will not permit defendants to introduce evidence not responsive to the issue joined.

5. Grants to corporations are construed most strongly against them. Every reasonable doubt is resolved against the corporation. Nothing is to be taken as conceded but what is given in unmistakable terms, or by implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. It is a principle universally recognized, that laws in derogation of common right are to be strictly construed. This doctrine is vital to the public welfare. It is axiomatic in the jurisprudence of the

Supreme Court of Louisiana and of the United States. 7 Otto, 666 ; 10 Otto, 561 ; 11 Otto, 540 ; 33 An. 68, 76 ; 3 English Law and Equity Reports, 64.

6. The City of New Orleans had the power to make Ordinance No. 1031, of August 16th, 1871, regulating the proper government of locomotive, passenger and freight cars which run within the limits of the City. The defendant having accepted the terms of said Ordinance is bound thereby. 32 An. 917 ; 6 Otto, 528 ; Rev. Statutes 1870, Sec. 689.

7. Ownership gives the right to use, to enjoy one's property in the most unlimited manner not prohibited by law. C. C. 491, 450. If you deprive one of the use and enjoyment of his property it amounts to confiscation. If you impair its permanent use, it is to that extent a taking. There need not be an exclusive appropriation of the property, but such an interference with the beneficial use thereof as operates as an essential abridgement of the owner's rights, incident to and an essential part of the estate. A serious interruption to the common and necessary use of property may be equivalent to the taking of it, and under the constitutional provision it is not necessary that the land should be absolutely taken. Cooley's Const. Limitations, 4 ed. 680 ; Woods on Nuisances, pages 796, 797 ; 13 Wallace, 166, 175 to 182 ; 13 Reporter, 370, December, 1881.

8. Every act, whatever, of man that causes damage to another, obliges him by whose fault it happened to repair it. C. C. 2315, 2316. The liability extends to employees and things in their custody. C. C. 2317.

9. No one can be deprived of his property without an equitable and previous indemnity, and in a manner previously prescribed by law. By an equitable indemnity is understood not only payment for the value of the thing of which the owner is deprived, but a remuneration for the damages caused thereby. C. C. 497 ; Fourteenth Amendment to Const. of United States ; Const. of Louisiana 1868, Arts. 110–11.

10. It is immaterial whether the fee to Euphrosine street is in the State, City, plaintiff or defendant. 4 Otto, 340 ; C. C. 667, 668.

11. "Pure air and the comfortable enjoyment of property are as much rights belonging to it, as the right of possession and occupancy." A charter cannot protect a nuisance. 7 Otto, 669, 667 ; C. C. 449, 450 ; see p. 21 of brief.

12. The plaintiff is entitled to recover for loss of profits in business. 4 English Law and Equity Reports, 20 to 23 ; 1 Addison on Torts, Banks & Bro. ed. 242 ; Woods on Nuisances, 890–2–3, 688 ; 1 Sedgwick on Damages, 7th ed. 274, notes 130 to 133 ; notes 134–7–8, 143.

13. The plaintiff is entitled to the injunction prayed for. 2 Story Equity Juris., 6th ed. 264–9 ; 1 Addison on Torts, 188 ; 4 English Law and Equity Reports, 20 to 23.

14. Prescription cannot be set up against a continuing nuisance or injury. 2 Addison on Torts, 1163 ; 7 Otto, 668–9 ; Woods on Nuisances, 823.

15. On measures of damages. See 8 Otto, 407 to 410 ; Sherman and Redfield on Negligence, 3d ed. p. 677 ; C. C. 1934, part 3d ; Revised Statutes 1870, Sec. 1482.

16. The plaintiff *dehors* the Ordinance 1031 of August 16, 1871, is entitled to recover the amount of damages proved under her prayer for amendment of the judgment appealed from.

## J. A. Campbell for Defendant and Appellant :

The defendant is a corporation of this State in possession of a railroad, and is invested by statute with rights, privileges, franchises and powers under laws promulgated according to law. Session Act of 1878, No. 89 p. 141. This corporation is a successor of corporations created by statute and recognized in public statutes, judicial decisions, and have their obligations defined in the Constitution of the State. These acts are public acts and are laws of which none can plead ignorance. C. C. Arts. 7, 429, 432 ; Field on Corp. § 388.

The Act No. 78, approved 21st March, 1870, has for its object the promotion of the prosperity of the State and commands a public service upon the highways and streets of New Orleans. This act is a public act.

The plaintiff claims consequential damages for acts done by the defendant in the regular

performance of daily duties. This claim contests the law and the fact of the defendant's performance of this duty and impeaches the validity of the defendant's right, power and privilege. The general denial is the proper and sufficient answer. Kellar vs. Parrish, 11 An. 111; Reynolds vs. Mayor, 13 An. 426; Bennett vs. New Orleans, 14 An. 120; Stewart vs. New Orleans, 9 An. 463; 3 Burrow, 1353; 1 Wilson, 45; 1 Chitty, Plead. 491, 139, 140.

The defendants have established that their tracks have been constructed with care and skill; that their engines are of the best description after the best model; that there is no disorderly, indiscreet, reckless management, but an orderly, regular and considerate fulfilment of public duties for the public advantage; and that their railroad is neither a public nor private nuisance, and that their denial is true, in law and in matter of fact. Sedgwick on Damages, 207; 1 Redf. on Railways, 345; 15 Hum. 63; 10 Cush. 385; 103 Mass. 1, 6, 7; Pearce on Railroads, 276, 277.

The plea of prescription is available to exclude all claim for damage not occasioned by tortious acts done within the time not affected by the plea. C. C. 3501; 2 An 400; 25 An. 414.

*L. E. Simonds* and *James Fentress* on the same side.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff has recovered in the District Court a judgment in her favor for damages in the sum of $3,500, and for an injunction restraining the defendant Company from running freight trains and steam engines in front of her property situated on the corner of Euphrosine and Liberty streets in this city; by which trains, running from the defendant's freight depot in the rear of the city to the Mississippi river front, she had alleged to have been damaged in the sum of ten thousand dollars, for injuries caused to her house, which she used as a dwelling and as a store for dealing in liquors, and for injuries caused to her business as a liquor dealer. Defendant appeals, and plaintiff prays that the judgment be amended and increased to the full amount of damages claimed by her.

In an amended answer, defendant pleaded the prescription of one and two years. As the damages claimed are predicated on alleged continuous wrongful acts, causes which are supposed to occur daily, and to produce effects daily repeated, we are of opinion that the plea cannot be sustained in law, and it must therefore be overruled. "In such cases, prescription, whatever the length of time, has no application." 7 Otto, 668, Fertilizing Company vs. Hyde Park.

In such cases, when "the injury is of a continuing nature, the cause of action continues and is renewed *de die in diem*, as long as the cause of the continuing damage is allowed to continue." Addison on Torts, p. 1163.

The next subject of discussion presented to our minds is a question of practice, which overshadows the main feature of the defense. When the defendant proceeded to introduce its evidence, it offered Act

No. 78 of 1870, entitled "an Act relative to the New Orleans, Jackson & Great Northern Railroad Company," Act No. 89 of 1878, entitled an Act "ratifying the organization of the New Orleans, Jackson & Great Northern Railroad Company, etc., with the Chicago, St. Louis & New Orleans Railroad Company," and sundry ordinances of the City of New Orleans, purporting to authorize the defendant to run its freight trains through certain streets of said city, so as to connect its freight depot with the Mississippi river.

The obvious intention in introducing that evidence was to show authority and sanction in law for the construction and use of the road complained of by plaintiff.

Plaintiff objected to, and the District Judge rejected, the evidence, on the ground that, the answer being a general denial, the Acts of the legislature, which were private Acts, and the ordinances of the city were not specially pleaded, and could not therefore be introduced in evidence under the pleadings.

The rule is firmly established, that private acts must be pleaded and proved, in order to be judicially noticed. We do not find it necessary to determine whether these Acts are necessarily private, as their relevancy in the cause can be disposed of on other grounds.

We shall now analyze the pleadings in the case with a view to determine their admissibility.

The gravamen of plaintiff's complaint is, that the defendant Company, "without any warrant of law or color of authority, has for, or during, the last twelve months, daily and at all hours of the day and night, * * run long trains of railroad cars heavily loaded with freight on a railroad track which said Company had previously constructed upon and along Euphrosine street, parallel with petitioner's said property and within twenty-five feet of the base of her said dwelling house and store." She then alleges that the injuries to her house and family and business resulted from the smoke, the smell, and the noise caused by the engines and trains, and from the jarring of her building caused by the speed and by the heavy weight of the trains, and she concludes with the sweeping allegation : "That all their acts are in violation of law and of the rights of petitioner."

Now, it is elementary in our practice that the general denial puts at issue all the facts and the law alleged by plaintiff. Hence, it seems clear to us, that the general denial in this case specially put at issue the charge that the defendant had no authority or sanction in law to run its trains as averred in the petition. It was, therefore, competent for the defendant to rebut the charge of illegally running its trains through certain streets of the City of New Orleans, as one of the elements of

defense against the damages claimed, and in resistance of the injunction prayed for, with a view to impede the exercise of its legal rights.

This conclusion is in close harmony with the letter and spirit of our rules of practice, as expounded on this point in several opinions of this Court.

In Kellar vs. Parrish, 11 An. 111, under the plea of general denial, the defendant was allowed to introduce titles in evidence for the purpose of rebutting the assertion that he was in illegal possession of immovable property. Similar rulings were made in several other cases. Pontchartrain R. R. Co. vs. Heirne, 2 An. 130; Reynolds vs. Shreveport, 13 An. 426; Bennett vs. New Orleans, 14 An. 120.

The same doctrine prevails under the common law practice. "In an action on the case, under the plea of not guilty, the defendant might not only put the plaintiff on the proof of the whole charge, contained in the declaration, or show the before mentioned matters which operated in discharge of the cause of action, but might give in evidence any excuse or justification." Chitty on Pleading, vol. 1, p. 491.

The evidence offered by the defendant was, therefore, erroneously excluded, and as it comes up with the bill of exception, it will be judicially noticed as part of the defense.

Under the terms of the Act of 1870, the New Orleans, Jackson & Great Northern Railroad Company was not only authorized and empowered, but was specially *required*, to extend their track from its then depot to the Mississippi river, through the streets of New Orleans. And the legislature thus acted, because it was considered " essential to the commercial prosperity of Louisiana, that the cost of transportation of freight should be reduced to the lowest point practicable," and because it was considered that one of the most efficient means of accomplishing that object was by filling the gap which then separated that railroad, " the great land avenue of trade and travel," from the Mississippi river, " the great highway to the West and to the Ocean." (See preamble of the Act.)

By ordinances of the city, adopted in furtherance of this legislation, the railroad company was authorized to lay a track, connecting its depot with the river, which track runs mainly on Euphrosine and St. Joseph streets, on which freight trains have been continuously run since 1870.

Under the provisions of Act No. 89 of 1878, the defendant Company was invested with the right or privilege thus acquired by the former Jackson & Great Northern Railroad Company.

We know of no provision of the Constitution of the United States or of our own State, under which the Act of the legislature conferring that

right could be invalidated, or its power to authorize the extension of the railroad track through the City of New Orleans questioned or even doubted.

The authorities cited on this point by plaintiff's counsel do not impress us as being applicable. The reverse of the doctrine which they contend for is recognized in one of the cases quoted by them on this point. In the case of Story vs. New York Elevated Railway Company, Reporter, No. 14, p. 596, in which the New York Court of Appeals held, that the use granted of a public street to an elevated railway company, with the right of using nearly all the street, including a portion of the sidewalk, together with the right of shutting out light from the house of the proprietor of an abutting lot, was really an expropriation without compensation, we find language which expressly excepts from that ruling cases of such a grant when applied to "railroads built upon the surface of the street without change of grade, and where the road is so constructed that the public is not excluded from any part of the street."

But the question is not new in our jurisprudence; it was recently examined by us in an exhaustive manner, involving a thorough review of the most recent and respectable authorities on the subject. In the case of Harrison et al. vs. The N. O. Pacific Railway Company, we emphatically recognized and enforced the doctrine, "that the legislature has the power to authorize the building of a railroad on a street of a city, and may directly exercise this power or devolve it upon the local or municipal authorities." The doctrine of that case, and the reasons which support it, are a complete refutation of the argument made on this point by plaintiff's counsel.

Having thus shown its unquestionable authority in law to extend its track and to run its trains thereon, the defendant Company is entitled to the protection of the rule which exonerates a party from any responsibility in damages for injury done to another in the pursuit of a legal right or in the performance of a lawful act, when such injury is not traced to, or caused by, his gross negligence or culpable carelessness. Hamilton vs. Railroad Company, 34 An. 974; Weeks, Absque Injuria, pars. 48, 49; 10 Cushing, 385.

We have read the evidence with attention, and we fail to find any element of damages proved against this defendant.

The free passage of the street is not impeded by the track, which is shown to have been laid with great care, from the best material, all combined with a view to facilitate the motion of all sorts of vehicles along or across the streets on which the track is laid, and that the best quality of coal, the Anthracite, is used as fuel. As to the loss of cus-

Werges vs. Railroad Company.

tomers, alleged by plaintiff to have been driven from the store by the consequent difficulty of access to her place, the evidence is simply overwhelming against her theory on that element of damages.

It is shown that, in years past, the railroad company had large and extensive car works in that vicinity, employing numerous laborers, and that when the freight was delivered at the depot, then a few blocks from her liquor store, numerous customers patronized her establishment. But after the removal of the car works to McComb City, and after the extension of the railroad track to the river, where the bulk of the freight has since been delivered and received, the laborers were gone, and the draymen ceased to flock at the depot. And with both departed plaintiff's main run of custom. Hence, the Company cannot be made to repair her losses in that particular.

The plaintiff next charges that the jarring caused by the heavy freight trains has shaken her house, has caused cracks in its walls, and seriously affected its security and materially impaired its value.

On this point the evidence is conflicting and clashing.

Several cracks are shown to exist in the walls of plaintiff's house, which are attributed by some of the witnesses to the action of the trains, and by others to the action of time, the soft nature of the soil, and to the shrinkage of the lumber used in the openings. Some of these cracks are shown to have existed long previous to the extension of defendant's track, and the weight of evidence supports the theory that the damage cannot be attributed to the action of the trains. A brick house, immediately in the rear of plaintiff's, subject to the same action of trains, and of older construction, is entirely free of such cracks, as is the case with many other houses similarly situated on the extended track, while, on the other hand, such cracks have taken place in numerous other houses in this city not in proximity to the passage of steam trains.

Plaintiff contends that defendant's only authority to run its trains on the extended track is derived from Ordinance 1031 of the City of New Orleans, adopted August 16, 1871, and she charges numerous and frequent violations of the conditions of the permission by the defendant and its employees. The ordinance reads as follows :

" The New Orleans, Jackson & Great Northern Railroad Company are hereby permitted to run their trains on their track on St. Joseph street, to and from their present depot and to the river, by steam, under the following restrictions."

" To-wit: That the engine shall be a smokeless dummy, and shall always be kept in front of the train while in motion ; that a watchman with a red lantern or signal flag shall be placed at each street crossing

while the train is in motion, and similar lights shall be attached to each side of the train when run during the night; that there shall be no blowing of whistles or ringing of bells, and that the trains shall not move at a greater speed than four miles per hour."

"This permission shall be subject to revocation at the pleasure of the Council."

"All damages to life and property, resulting from running of trains as herein provided, shall be at the risk and responsibility of said railroad company."

"For each and every contravention of this ordinance the said railroad company shall be liable to a fine of one hundred dollars."

The weight of evidence shows a substantial compliance, by the defendant, with the conditions of the ordinance; but it appears that some of the conditions have been frequently violated, for instance, in using smoking engines, blowing of whistles and ringing of bells.

But it is very clear that plaintiff can avail herself of none of these violations, unless she shows special damages accruing therefrom to her or to her property. The city alone could and should take steps to enforce the conditions of its regulations, by the use of its police power, as provided for in the fourth section of the ordinance, or by the exercise of the reserved right to revoke the permission. But plaintiff has entirely failed to show any cause of action on her part growing out of the contraventions shown to have occurred.

· We shall now deal with the three remaining subjects of complaint urged by plaintiff: the damages attributed to the smoke, the noise, and the offensive smells proceeding from the defendant's trains.

In making these investigations, courts are usually guided by the following wise rules:

"The injury must be clear, direct and positive. It must be the legitimate and natural result of the nuisance charged, and in no essential degree the result of other artificial causes." * * * "If there is a reasonable doubt as to the causes of the injury, the benefit of the doubt will be given to the defendant, if his trade is a lawful one." * * Wood's Law of Nuisances, Sec. 472.

Again, "The production of mere inconvenience, resulting from the exercise of a trade, is not sufficient to constitute that trade a nuisance; * * but the injury must be real and substantial, and such as impairs the ordinary enjoyment, *physically*, of the property within *its sphere*, not measured by the standard incident to a dainty and luxurious mode of living, but according to plain and simple modes and habits incident to persons of ordinary tastes and sensibilities." Wood's Law of Nuisances, Sec. 792; Walter vs. Selfe, 4 Eng. Law, 1 Eq. p. 20.

In applying these rules to the case at bar, we practically recognize the most liberal construction in favor of plaintiff, and yet her case fails under the evidence.

The record shows that in the busiest season of the year the highest number of trains run is five per day each way, and that the average time used by all trains, in passing any particular house, is twenty minutes for the whole day, and the number of drays or other vehicles which would be required to haul the same volume and weight of freight would be twelve hundred a day.

It further appears that the noise and jarring caused by a procession of vehicles, known in this city as "*floats*," are greater than the same caused by a train of an even number of cars.   Hence, the location of the track near plaintiff's property has not increased her inconvenience on those points, without considering the dust which would be raised by the teams on a dirty street like Euphrosine.

The record further shows that the neighborhood is not in the least desirable for a residence.

It shows that plaintiff's house is situated on Liberty street, on the corner of Euphrosine, and is surrounded as follows:

In its front is located an immense steam planing mill and lumber yard, in which the whirl of the wheel and the hissing of steam are heard from early morn to 11 o'clock at night; and where the fuel burned is the refuse trash of the yard.   In its rear and on its left side is a huge lumber yard, in which lumber is piled a score of feet high, and for its next door neighbor is a large blacksmith shop, run every day and all day; on the right side comes Euphrosine street, and an empty space used as a "steamer's landing," on the New Canal and New Basin, where two steamers, burning (like the blacksmith neighbor) soft coal, are tied up a couple of days every week.   And in the face of such a surrounding, plaintiff wishes us to adopt her theory that all the inconveniences and discomforts of her house, the lower story of which is used for a dram shop, known in this city as a "barrel house," are to be exclusively attributed to the action of the steam railroad trains, which are in her neighborhood, at most, twenty minutes per day.

In a celebrated case in England, the complainant, who declared against a colliery, whose black smoke was a nuisance to his dwelling house and surrounding garden, was defeated, owing to the fact that in his neighborhood a pure atmosphere could not be expected, even if the obnoxious colliery could be removed.   Woods on Nuisances, Section 473.

This reasoning is strikingly applicable to plaintiff's condition.

82

Our conclusion is, that she has utterly failed to make out a case for damages, and much less for an injunction against the defendant's legally established right to run its trains on its extended track to the river.

Many other points have been made and numerous other questions have been ably discussed by counsel on both sides, but the foregoing views are deemed sufficient for a proper adjudication of this controversy.

The judgment of the lower court, with the exception of the ruling on the plea of prescription, is, therefore, annulled, avoided and reversed; and it is now ordered that plaintiff's demand be rejected and her action dismissed at her cost in both Courts.

MANNING, J. The recital of the evidence in the opinion of the Court abundantly demonstrates that the damage suffered by the plaintiff is due to other causes than the running of the trains of the defendant Company. I do not doubt her legal right to recover whatever sum she could have proved as damages from that cause. No Act of the legislature, nor ordinance of the City Council, nor both combined, authorizing a railroad to run its trains through the streets of a city, can protect it against the claims for damages of those whose property is injured thereby.