139 So. 755

RHODES et al. v. INTERNATIONAL PAPER CO.

No. 30860.

Feb. 1, 1932.

Madison & Madison, of Monroe, for appellant.

Newton & Newton, of Monroe, for appellees.

OVERTON, J.

Mrs. Nettie Rhodes and her six children are the owners of approximately 342 acres of land in Morehouse parish. Mrs. Rhodes is the owner of an undivided half interest

in the land, and is entitled to the usufruct of the remaining half, owned in indivision by her children.

The land is located in a straight line some eight or ten miles, and by water some fifteen or eighteen miles, from defendant's pulp mills in Bastrop. All of the land is low. Boeuf bayou traverses it, and, in its course there, subdivides itself into shallow channels, later uniting again into one channel. For time immemorial, to say the least, by far the greater part of the land has been overflowed by heavy spring rains and by heavy freshets. About 70 acres of the tract of 342 acres is tillable. The remainder of the tract, which is lower, and contains basins, is timbered land. This part is valuable only for timber purposes, and, to some extent, for purposes of pasturage. Sales have been made, from time to time, of the merchantable timber on it. The cypress that was there has been removed, and, as we appreciate it, some of the hardwood. However, there remains uncut a not inconsiderable part of the hardwood, consisting of pin oak, tupolo gum, and other species. The timber on the land has been dying during the past five or six years. The land that is tillable has not been rented since 1924, although it was rented prior thereto, and although efforts have been made to rent it since.

A few years ago the Bastrop Pulp & Paper Company, which later changed its name to the Southern International Paper Company, and was later succeeded by the International Paper Company, the defendant herein, erected pulp mills at Bastrop. In the manufacture of the pulp, the Bastrop Pulp & Paper Company and its successor used chemicals.

These companies emptied the waste waters from their mills into Stalkinghead creek, whence they go into Black bayou, and thence into Boeuf bayou, which traverses plaintiffs' land. Plaintiffs attribute the injury to their land, the loss of rents, and the destruction of their timber to the chemicals in these waste waters, and demand compensation of defendant for the damages sustained. These damages they itemize as follows: For permanent damage to land, $15,000; for loss of rent or crops for the years 1927 to 1929, inclusive, $2,250; and for damages to timber $900—making a total of damages demanded of $18,150.

Defendant, besides answering plaintiffs' demand, filed, among other pleas, the prescription of one year. The trial court sustained the plea of prescription as to all damages occurring to the timber, and arising by reason of the loss of crops and rents, more than one year before the institution of the present suit. As to the loss of crops and rents, not prescribed by one year, the court found that the evidence is too uncertain and conjectural to support a judgment in favor of plaintiff. As to the timber, the court found that some of it was dead, but it failed to find that it died as a result of chemicals contained in the waste waters from defendant's mills, and it also failed to find, which the evidence suggested was possible, that the cause of the death of the timber was salt contained in water, which flowed into Boeuf bayou from gas wells, but it found that the timber died from the constant inundation of the land on which it stood, brought about by an unusual, unnatural, and excessive quantity of water, occasioned by the combined

waters of defendant's pulp mills, of the gas wells, and the sewerage system of Bastrop, no one of which sources was capable of itself of causing the inundation resulting in the death of the timber. The court also found that 15,000 feet of the timber, which it valued at $2 a thousand feet, died from this cause within one year prior to the institution of this suit, and rendered judgment for plaintiffs against defendant, on this item, for $30. The theory upon which defendant was held liable on this item was that it was a contributor to the tort, and liable in solido for the damage. The court also found that 42 acres of the land, which constitutes a part of the timbered land, was rendered useless to plaintiffs by reason of its inundation. It valued this part of the land at $9.50 an acre, finding it to be worth $399, and rendered judgment for plaintiffs therefor on the same theory that it did for the damage to the timber, making the total judgment for damages to timber and land $429, from which defendant has appealed.

The plea of prescription rests on article 3536 of the Civil Code, which provides, among other things, that actions for offenses and quasi offenses prescribe in one year, and upon article 3537 of the Civil Code, as amended and re-enacted by Act No. 33 of 1902, which provides, inter alia, that, where land, timber, or property has been injured, cut, damaged, or destroyed, this prescription runs from the date knowledge of the damage has been received by the owner of the property.

The action for loss of rent and of crops, caused by the inundation of one's property with water, charged with deleterious chemicals, or not charged, is an action, based on an offense or quasi offense, and is prescribed by one year. It is immaterial in this case whether the prescription runs on this item from the date of the damage or from the date knowledge of the damage was received by plaintiffs, for the record fully justifies the conclusion that knowledge was received of the damage when it was sustained, or so soon thereafter as to play no part in this case.

With reference to the damage to the timber, brought about by the same cause, the action therefor is also one based on an offense or quasi offense, and is prescribed by one year. In this instance, the prescription clearly runs, as appears from the language of article 3537 of the Civil Code from the date knowledge of the damage has been received, the burden of showing when the knowledge was received, being, as has been held, upon the one against whom prescription is pleaded. Spyker v. International Paper Co. (La. Sup.) 138 So. 109,[1] decided November 3, 1931; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367. There is nothing in this case to show that plaintiff did not know of the damage as it occurred, but rather to the contrary.

The fact that the damage, if it occurred, was continuous did not suspend the prescription, but it ran as the damage occurred. Griffin v. Drainage Commission, 110 La. 840, 34 So. 799; Egan v. Hotel Grunewald Co., 134 La. 740, 64 So. 698; Spyker v. International Paper Co. (La. Sup.) 138 So. 109,[1] decided November 3, 1931.

---

[1] 173 La. 580.

We think, therefore, that on these items the lower court properly sustained the prescription of one year as to all damages that may have been sustained more than one year prior to the institution of this suit.

 Of these items, touching the loss of rents, crops, and timber, there remains for consideration the damages demanded for the loss sustained, for the year immediately preceding this suit. As observed by the trial court, the evidence adduced on the item of the loss of rents or crops is too uncertain and conjectural to justify a judgment for plaintiffs in any amount. Contrary to the view of the trial judge, especially as to the quantum of damages suffered, this is also true as to the item of damage to timber. It is likewise true as to the item of permanent damage to the land involved herein.

After reading and analyzing the evidence, we feel far from satisfied that there were any chemicals in the waste waters from defendant's mills that were deleterious either to land or timber. They were of an alkaline nature, and should have been beneficial rather than deleterious. In fact, tests were made showing that sludge from waters similar to these was beneficial to plant life. Moreover, aside from the chemicals in the water, we are not satisfied from the evidence before us that the drainage from defendant's mills is, in any wise, responsible for the condition of plaintiffs' property. The trees, so far as appears, may have died from another cause. Defendant's mills are some miles from plaintiffs' land. There is a considerable stretch of water to be affected by the waste waters from these mills before plaintiffs' land, although low, can be inundated. The inundation of parts of them may be due to improvements in the drainage of lands along the banks of Boeuf bayou and of streams leading into it, whether these lands drain directly or indirectly into these streams, or from other causes. The proof adduced, in our view, leaves the cause of innundation uncertain.

The judgment, appealed from, is set aside, and judgment is now rendered rejecting plaintiffs' demands at their costs in both courts.

139 So. 757