[55 So. 231

## YOUNG v. INTERNATIONAL PAPER CO.

No. 32324.

April 23, 1934.

Rehearing Denied May 21, 1934.

Edward L. Gladney, Jr., of Bastrop, for appellant.

Madison, Madison & Fuller, of Bastrop, for appellee.

OVERTON, Justice.

Defendant operates two paper mills in the city of Bastrop. Plaintiff is the owner of a tract of land, some eight miles southwest of Bastrop, comprising something over 700 acres, a good part of which is swamp, and a large part of which is timbered with pin oak, tupelo gum, some cypress, and elm. Much of the timber has been cut and removed from time to time, but a good part of it, especially the cypress, has not been removed.

Plaintiff sues defendant for damages to the timber, not cut and removed, but inundated by water, it being plaintiff's contention that this timber was killed by waste water from defendant's mills. He also sues defendant for damages to the land, and for an injunction to abate a nuisance.

In the manufacture of pulp, out of which to make paper, defendant uses chemicals. The waste water from its mills are emptied into Stalkinghead creek—the chief medium of drainage for the city of Bastrop—then enters Black bayou, which traverses plaintiff's land. The land traversed is bowl shaped in form, the higher parts being at the edges. At or near the center there is a shallow lake, small in size, which constitutes the cypress brake. During the spring rains and heavy downpours, this basin became largely flooded from time immemorial, but it was soon emptied by Black bayou. It is now urged that the inpour is so large and constant as usually to keep the land flooded.

Plaintiff attributes the loss of his timber to keeping his land flooded, and especially to the injurious chemicals contained in the waste waters from defendant's mills, and the injury to his land to the same cause. Although the land is in the midst of an agricultural country, no part of it was ever cultivated until 1928, when plaintiff, just prior to the institution of this suit, attempted to cultivate a small part of it. The damages sued for aggregate $30,050, and are itemized.

Defendant, among other defenses, has filed the plea of prescription of one year, resting on articles 3536 and 3537 of the Civil Code, the former of which enacts that actions for offenses and quasi offenses prescribe in one year, and the latter of which enacts, as amended and re-enacted by Act No. 33 of 1902, that where land, timber, or property has been injured, cut, damaged, or destroyed, the prescription provided by the former article runs from the date knowledge of the damage is received by the owner of the property. The action for the damages here comes within the contemplation of those two articles. The burden of proof as to when knowledge is acquired by the owner of the land rests upon the owner, or, as sometimes expressed, upon the one against whom prescription is pleaded. Rhodes v. International Paper Co., 174 La. 49, 139 So. 755; Spyker v. International Paper Co., 173 La. 580, 138 So. 109; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367. Prescription is not suspended by the fact that the damage is continuous, but runs on each item from the date it was inflicted. Rhodes v. International Paper Co., supra; Spyker v. International Paper Co., supra; Griffin v. Drainage Commission, 110 La. 840, 34 So. 799.

The petition herein was filed on May 9, 1929. Plaintiff urges that he did not have actual notice of the true extent of the damage to his land and timber until July, 1928, and also that the only knowledge that he had, as to possible damage, was on May 28, 1928, just within a year prior to the filing

of suit, at which time he heard that his land was under water, and so testifies. The preponderance of the evidence, however, shows that plaintiff has fallen into error as to when he had acquired sufficient knowledge to start prescription to running, for all that is required to do so is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things. Nat. Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Spyker v. International Paper Co., 173 La. 580, 138 So. 109. Plaintiff had such information. The preponderance of the evidence shows that he had such knowledge prior to the beginning of May 9, 1928, the commencement of the first year before the filing of suit.

This appears from a letter by Mr. Womack, plaintiff's attorney from Mississippi, of date April 17, 1928, to defendant, wherein Womack says that he was in Bastrop last week investigating a cause of action which plaintiff has against defendant for damages in causing about 300 acres of plaintiff's land to be overflowed by refuse water from defendant's mills, and finds that about that much of plaintiff's land has been covered with water from defendant's mills for some time, and that the high acidity of the water, coupled with the fact that the water stands continuously on plaintiff's land, has caused the vegetation and timber thereon to die, and has rendered the land worthless for use and occupancy. Again, on April 25, 1928, prior to the commencement of the year of prescription, plaintiff, himself, wrote one of defendant's counsel, saying that he had taken his land off the market, because of his inability to sell the land for anything approaching its value, with acid water on about 250 acres of it, this

water having killed the timber and destroyed the sale of the entire tract, and that he will be over soon to see what kind of a settlement he can obtain from defendant.

It would, therefore, seem to be conclusive, that plaintiff possessed knowledge of the condition of the timber and land before the beginning of the year, antedating the day suit was filed. However, as the cause of damage, assuming that the waste water from the mills caused it, is of such a nature as to be continuing as long as the water remains on the land, and as long as there is any timber left to kill, it is important to ascertain whether any timber, and, if so, how much, was destroyed within the year preceding the filing of suit.

The clear weight of the evidence is to the effect that the timber died between 1926 and 1927. It does not satisfactorily appear that any has died since then. The year of the death of the timber appears, not only from the evidence of witnesses residing in the vicinity, but from the evidence of expert witnesses, basing their opinions on the condition of the dead timber.

The foregoing facts satisfy us that the timber, whatever may have been the cause of its death, died more than a year before the institution of suit, and that damages for its loss are, therefore, prescribed.

■ As to the land, all damages for injury that may have been done to it more than one year before suit was filed, are prescribed. But, as damages caused by standing water may continue to be inflicted as long as the water covers the land, we shall have to consider that phase of the case. At once it appears to the mind that the land is too low

and swampy to be fit for agriculture, and, as to pasturage, the land does not appear to be desirable. Its chief value is for its gas prospects. The water has not injured these. Plaintiff is entitled to no damages on this account. The damages, sued for, as to the land, are confined to its injury.

■■ Plaintiff has asked for an injunction to abate the alleged nuisance. The trial court, under all of the facts before it, refused to grant the injunction. The granting of it was discretionary. Plaintiff's land is hardly susceptible now to any damage that the water may cause it, and, if such should occur, it may be easily compensated in money. To enjoin defendant from using the stream to take off its waste water, and thereby deprive it of its only means of doing so, is virtually to close down mills costing several millions of dollars to prevent some possible damage, of no particular moment, on land, which has but slight value, save possibly for mineral purposes.

In City of Harrisonville, Mo., v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334, 53 S. St. 602, 603, 77 L. Ed. 1208, it was said in a suit to enjoin the pollution of a creek by sewage from a city that:

"Thus, the question here is not one of equitable jurisdiction. The question is whether, upon the facts found, an injunction is the appropriate remedy. For an injunction is not a remedy which issues as of course. Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the con-

flict is between interests which are primarily private."

The trial court rejected plaintiff's demands, thereby denying the injunction. We see no reason to interfere with the judgment.

The judgment is affirmed.

ST. PAUL, J., absent.