KNOLL, J.,
concurring in part and dissenting in part.
hi join that portion of the majority opinion regarding plaintiffs’ actual or constructive notice. The contamination warning letters from the DEQ should have placed a reasonable person on notice of contamination on their property.
With all due respect, I dissent from the majority’s discussion of the continuing tort claim. The question before this Court is whether the continuing presence of noxious chemicals under the plaintiffs’ land constitutes an ongoing wrongful act, or is merely an ongoing injury resulting from a prior wrongful act (i.e., the leaking gas tank). In accord with both the Civil Code and this Court’s longstanding precedent, I would find the existence of an abatable noxious chemical under another person’s land constitutes a continuing tort and tolls prescription.
In my view, the majority opinion is fatally flawed in not recognizing that successive damages are daily occurring from the trespass on plaintiffs’ property from | gdefendants’ undisputed leakage of toxic chemicals. The offending chemicals are so toxic, they present a danger not only to property, but to human and animal health, which the state by law requires remediation of such property. With the presence of these toxic chemicals on plaintiffs’ proper *1008 ty, the majority opinion very dismissively states:
As in Crump, the presence of the gasoline in the soil and subsurface is simply the continued ill effect of the original tortious incident — the leaking of gasoline which ceased in 1997 when the tanks were replaced.
Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720, concerned the presence of a canal and the draining of water, not toxic chemicals that are daily causing successive damages. I further find the majority opinion’s rationale for the tort of trespass confusing in that its reasoning is based upon the leaking tanks. Specifically, the majority opinion concludes by stating:
Under the factual allegations of plaintiffs’ petition, the trespass, if indeed there was one, is simply not a continuing one. The presence of gasoline on plaintiffs’ property is the continuing effect of prior wrongful conduct which occurred on neighboring property. The plaintiffs’ pleadings contain no allegation of leaking or seepage after 1996. In other words, there are no allegations of new conduct after the initial leakage ceased. There was a discrete encroachment which was not repeated after the tanks were replaced and which allegedly resulted in permanent harm to plaintiffs’ property. Because the operating cause of injury — the damage-causing conduct — is not continuing, there is no continuing tort. As a result, the theory of continuing trespass/continuous tort cannot operate to suspend the running of prescription.
The “prior wrongful conduct” referred to in this passage, i.e., the leaking tanks, is not what plaintiffs’ claim is based upon. Plaintiffs would have no right to sue defendants because their tanks leaked. Plaintiffs are suing defendants because defendants’ toxic substances trespassed upon their property causing successive damages to their land as long as the trespass continued. The majority opinion is |^centered around the initial wrongful conduct and the damages as simply the “continued ill effect of the tortious conduct” which ceased in 1997 when the tanks were replaced. This view does violence to environmental contamination issues and will impact future litigation in this area.
A. The Continuing Tort Doctrine in Louisiana Law
The continuing tort doctrine provides that, when a tort occurs over a period of time, prescription does not begin to run until the defendant’s harmful action has ceased. The relevant prescriptive period for a claim involving damage to immovable property is found in Civ.Code art. 3493:
When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.
Although the continuing tort doctrine is not explicitly set forth in Civil Code art. 3493, it is fairly implied in that article’s concept of damage. To determine when prescription begins to run under article 3493, a court first must determine when the “damage is caused” to the immovable property. In other words, when the plaintiff continues to suffer further damages to his property flowing from the initial tor-tious act, the tort continues. The continuing tort doctrine recognizes that, in some circumstances, there is no single wrongful act that “causes” the damage. Instead, there are continuous or repeated wrongful acts, each of which creates a new harm. Until those wrongful acts cease, prescription does not run.
This Court has long held where “the damages claimed are predicated on alleged *1009 continuous wrongful acts, causes which are supposed to occur daily, and to produce effects daily repeated ... ‘prescription, whatever the length of time, has no application.’ ” Di Carlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327, 329 (1933)(quoting Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 668-69, 24 L.Ed. 1036 (1878)). A continuing tort exists “where the operating cause of injury is a continuous one and gives rise to successive damages.” Crump v. Sabine River Authority, 98-2326, p. 7 (La.6/29/99), 737 So.2d 720, 726. This is distinguished from a “continuation of the ill effects of an original, wrongful act,” which does not create a continuing tort. Id. at 728. The crucial distinction is between an ongoing wrongful act, which tolls prescription, and mere ongoing damages, which do not. The majority holds the “operating cause of injury” is the leaking tanks, which were admittedly repaired several years before the filing of this lawsuit. I disagree. The proximate cause of plaintiffs’ injury is the continued existence of noxious chemicals underneath then* property. Until those chemicals are removed, plaintiffs will continue to suffer additional harm, and the tort will not prescribe.
Crump v. Sabine River Authority, supra, is this Court’s leading case on continuing torts. In Crump, a canal dug on neighboring land drained a nearby bayou, thereby drying up plaintiffs waterfront property and preventing her from accessing Toledo Bend Lake. Id. at 723. Plaintiff did not sue until nearly 20 years after the canal was dug. Plaintiff argued the continued existence of the canal on her property, and her continued inability to access the lake, created a continuing tort and tolled prescription. Defendant countered that there was only one unlawful act, the construction of the canal, and prescription began to run from the date the canal was completed. Id. at 726. The Court held for defendant, relying on Griffin v. Drainage Commission of New Orleans, 110 La. 840, 34 So. 799 (1903), which also involved the unlawful digging of a canal. The Griffin court held, even though the damages continued up to the time suit was filed, “the cause of the injury arose, produced injury, and ceased,” and prescription began to run the day the canal was complete. Id. at 801.
|SB. Trespass[1]
The law of trespass is based on the “fundamental sanctity of private property from arbitrary invasion.” Loeblich v. Garnier, 113 So.2d 95, 106 (La.App. 1 Cir. 1959)(Tate, J.) This Court has held “[a]ny unlawful physical invasion of another’s property is a ‘trespass.’ ” Gliptis v. Fifteen Oil Co., 204 La. 896, 16 So.2d 471, 474 (1943). Trespass is not limited to intrusions on the surface of the land, but includes subterranean trespasses as well. Id.
The essence of trespass is the unlawful invasion of a person or object on the property of another. Perrilloux v. Stilwell, 00-2743 (La.App. 1 Cir. 3/28/02), 814 So.2d 60, 63. The “wrongful act” of trespass is not merely entering another’s property, but remaining there. Bellard v. Biddle, 98-1502 (La.App. 3 Cir. 3/17/99), 734 So.2d *1010 733, 735; Williams v. City of Baton Rouge, 96-0675 (La.App. 1 Cir.1998), 715 So.2d 15, 24. This is made explicit in the statute defining criminal trespass, which forbids “remain[ing] in or upon property, movable or immovable, owned by another without express, legal, or implied authorization.” La.Rev.Stat. § 14:63(C).
Consistent with these general principles, Louisiana appellate courts have routinely held trespasses to be a continuing tort. In Estate of Patout v. City of New Iberia, which resulted in several published opinions,[2] the city of New Iberia operated |fia landfill that spilled garbage onto plaintiffs’ property. The trial court denied the city’s exception of prescription, and the Third Circuit affirmed on the grounds that the city’s failure to remove the trash from the property constituted a continuing tort: “the City’s trespass on the plaintiffs’ immovable property continues by virtue of its failure to remove the deposited garbage .... debris or other objects placed on another’s property constitutes a continuing trespass and prescription does not apply until the offending acts are abated.” Id. at 1252-53, citing Dore v. Jefferson Guaranty Bank, 543 So.2d 560, 562 (La.App. 4 Cir.1989)(Litter on plaintiffs land constitutes a “continuing trespass”); Terral v. Poole, 484 So.2d 227, 228 (La.App. 3 Cir.1986)(Sewer line wrongfully installed on plaintiffs property, along with pile of debris, constitute continuing trespasses whether or not the sewer line is in use).
Estate of Patout was cited with approval in Lopez v. House of Faith Non Denomination Ministries, 09-1147 (La.App. 4 Cir. 1/13/10), 29 So.3d 680. Lopez involved a building on defendant’s land that was damaged by Hurricane Katrina and eventually fell onto plaintiffs’ house. Id. at 681. The trial court held prescription began to run on the date the defendant’s building first made contact with plaintiffs’ home. The court of appeals reversed, finding there was a continuing tort and prescription did not begin to run as long as the building “remained in physical contact with Plaintiffs’ house.” Id. at 684.
In Cooper v. Louisiana Department of Public Works, 03-1074 (La.App. 3 Cir. 3/3/04), 870 So.2d 315, the Corps of Engineers built a series of locks and dams on the Ouachita River, causing significant flooding upstream as water backed up in the |7Ouacita’s tributaries.[3] Id. at 320. The court found the continued existence of water on plaintiffs’ land created a continuing tort, and prescription did not begin to run until the water was drained. Id. at 323. See also Freestate Industrial Dev. Co. v. T & H, Inc., 188 So.2d 746 (La.App. 2 Cir.1966).
The rule set forth in trespass cases is simple: “the wrong continues as long as *1011 the offending object remains.” Lopez v. House of Faith Non-Denomination Ministries, 09-1147 (La.App. 4 Cir. 1/18/10), 29 So.3d 680, 684. As clearly explained in Tujague v. Atmos Energy Corp., 442 F.Supp.2d 321, 325 (E.D.La.2006):
Atmos owed Tujague a duty not to trespass upon his property. Atmos breached this duty when it placed the pipeline and debris upon Tujague’s property without his permission, and the breach continued until those items were removed. The trespass was a continuing tort and did not cease, and prescription did not begin to run, until the pipeline and debris were removed from Tujague’s property.
I would apply that rule to the present case. It is undisputed that the noxious chemicals leaked from defendants’ gas tanks remain under plaintiffs’ land, thereby breaching defendant’s duty not to trespass. Although these chemicals are invisible, they are nonetheless corporeal and therefore capable of causing a trespass, as they “have a body ... and can be felt or touched.” Civ.Code art. 461. See McNamara v. Stauffer Chemical Co., 506 So.2d 1252, 1258 (La.App. 1 Cir.1987), writ denied, 512 So.2d 454, 455 (La.l987)(sulfuric acid is a corporeal movable); McNamara v. John E. Chance & Associates, Inc., 491 So.2d 154, 157 (La.App. 3 Cir.1986)(diesel fuel is a corporeal movable.)
1 Although this Court has not explicitly stated that trespass is imprescriptable until the offending object is removed, that holding is fairly implied by our decision in Young v. International Paper Co., 179 La. 803, 155 So. 231 (La.1934), a chemical contamination case where defendant’s paper mill leaked acid water onto plaintiffs land and destroyed his timber. The trees died more than one year before suit was filed, but the acid water remained on the land. Id. at 233. Although the Court held any claims for destruction of the timber were time-barred, we recognized “damages caused by standing water may continue to be inflicted as long as the water covers the land” and claims based on those damages had not prescribed. Id. Although the phrase “continuing trespass” had not yet entered this Court’s legal lexicon in 1934, Young shows that an unabated trespass has long been held a continuing tort in Louisiana law.[4]
C. South Central Bell v. Texaco
Defendants argue this case is controlled by South Central Bell v. Texaco, 418 So.2d 531 (La.1982), in which an underground gasoline leak caused severe damage to plaintiffs telephone cables. Plaintiff, SCB, began to notice gasoline in its manholes in 1971, and the nearby Texaco station replaced its leaky tanks. The parties assumed the problem was solved as the remaining gasoline would eventually drain away from the cables and the damage would naturally subside. Id. at 532. However, the gasoline did not disappear, and SCB continued pumping gas out of the manholes on a regular basis. In September 1974, SCB replaced all cable in the area due to the |9gasoline corrosion. Id. SCB then discovered the .gasoline in the manholes actually came from leaking tanks at *1012 a nearby Shell station. SCB filed suit in October 1975. Shell’s tanks were replaced in December 1975, and the problem subsided thereafter. Id. at 533.
The trial court held the existence of the gasoline contaminating the cables was a continuing tort, and prescription began to run in September 1974 when the cables were replaced. The trial court reasoned the extent of SCB’s damage was the cost of replacing the cables, and no additional damages were suffered after their replacement. Plaintiff appealed, arguing that prescription did not begin to commence as long as the cause of the damages (i.e., the gasoline) remained underground. The court of appeal affirmed on the grounds that once the old cables were irreparably damaged and had to be replaced, the additional gasoline leakage did not cause any more damage.[5]
This Court reversed and held prescription did not begin to run until December 1975, when Shell replaced its leaky tanks and the gasoline drained away. The court reasoned, “[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated.” Id. at 533. Defendants claim South Central Bell establishes a rule that prescription begins to run when a polluter replaces leaky gasoline tanks.
However, in South Central Bell it was undisputed that replacing the tanks resolved the issue. The gasoline drained away from the telephone lines shortly thereafter, and no additional remediation was necessary. The successive damages ceased. In the case before us, gasoline remains on the Hoggs’ property several years after defendants’ leaky tanks were replaced. Indeed, the chemicals may not have even migrated onto plaintiffs’ property until some time after the leak was stopped. 110Moreover, South Central Bell did not argue, as do the Hoggs, that a continuing tort exists until the gasoline is removed, or that the gasoline created a continuing trespass. Those issues were simply not before the court in South Central Bell. Importantly, “[j]udicial decisions do not stand as binding ‘precedent’ for points that were not raised, not argued, and hence not analyzed.” Legal Services Corp. v. Velazquez, 531 U.S. 533, 557, 121 S.Ct. 1043, 1057, 149 L.Ed.2d 63, 82 (2001)(Scalia, J., dissenting)(collecting cases). It would be improper to extend the holding of South Central Bell to a legal argument that was not made by either party in that case.
D. Out of State Authority
As explained above, the continuing tort doctrine is wholly consistent with the Civil Code and this Court’s long held jurisprudence. However, the concept is not unique to Louisiana, and the out of state jurisprudence warrants review as persuasive authority.
Perhaps the most comprehensive discussion of chemical contamination as a continuing tort is Hoery v. U.S., 64 P.3d 214 (Colo.2003). A nearby Air Force base negligently released toxic chemicals from 1940 through 1994, and the chemicals migrated under plaintiffs’ land. Hoery knew of the contamination in 1995, but did not sue until 1998, after the claim had facially prescribed. Id. at 217. The federal district court held for defendant, finding “the only ‘wrongful act’ alleged by Hoery was the actual release of toxic chemicals by the United States.” Id. The Tenth Circuit sent a certified question to the Colorado Supreme Court, which was called upon to *1013 decide whether the “ongoing presence of those toxic chemicals on plaintiffs property constitute continuing trespass and/or nuisance” and tolled the statute of limitations. Id. at 215.
The Colorado Supreme Court held for plaintiff, as the defendant’s “tortious conduct is not limited to the initial release of those chemicals.” Id. at 216. Instead, an “actor’s failure to remove a thing tortiously placed on another’s land is considered a ‘continuing trespass’ for the entire time during which the thing is wrongfully placed on the land.... Until the thing tortiously placed on the land, or underneath the land, is removed, then liability for trespass remains.” Id. at 218, citing Restatement (Second) of Torts § 161 cmt. B; 75 Am.Jur.2d Trespass § 26. As a result, the “migration and presence of toxic chemicals on his property were in themselves wrongful acts for which the United States was responsible.” Id. at 217.
The Colorado court convincingly distinguished its earlier cases, similar to Crump, involving irrigation ditches and canals. Earlier Colorado courts found prescription began to run when the ditch or canal was complete.[6] The Hoery court distinguished those cases, which were based on the fact the ditch served a useful purpose and “defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent.” Id. at 220. Of course, there is no “socially beneficial” use to the chemicals currently contaminating the Hoggs’ property.
The basic holding of the Hoery case is “[t]he failure of the United States to remove the pollution from Hoery’s property which it wrongfully placed there constitutes a continuing property invasion for the entire time the contamination remains.” Id. at 222. Several other courts have reached the same result. See Nieman v. NLO, Inc., 108 F.3d 1546, 1556-57 (6th Cir.1997)(Although discharge of uranium was years ago, plaintiff may bring claim for resulting contamination to his land. However, plaintiff can only recover for damages suffered within four year prescriptive period); Arcade Water Dist. v. U.S., 940 F.2d 1265 (9th Cir.1991)(Al-though defendant stopped operating pollution laundromat years before, tort |i2was continuing as long as chemicals leached into plaintiffs water supply); State of Florida v. Fleet Credit Corp., 691 So.2d 512, 514 (Florida Dist. Ct.App.1997)(In “groundwater pollution cases, it is the ongoing contamination, not the initial disposal of wastes, that constitutes a continuing, but abatable, nuisance”); Taylor v. Culloden Public Service Dist., 214 W.Va. 639, 591 S.E.2d 197, 204 (2003) (“as long as the arsenic remains on the Kermit Lumber business site ... and as long as the arsenic is flowing into the Tug Fork River, the harm or nuisance continues”); In re AS-ARCO/Vashon-Maury Island Litigation, 2001 U.S. Dist. LEXIS 7154 at *12-15 (W.D.Wash.2001)(Soil contamination “claims are not barred by the statute of limitations so long as the intruding substance remains in the ground.”)
Notably, the federal Fifth Circuit has not adopted this rule. In the recent decision of Kling Realty Co. v. Chevron USA Inc., 575 F.3d 510 (5th Cir.2009), the Fifth Circuit held chemical contamination from a closed oil well was not a continuing tort. Although the court noted Louisiana law recognizes the doctrine of continuing trespass, it held the “contamination of the Kling/Walet property caused by Chevron is the continuing effect of prior conduct; the soil damage is unlike dumping garbage *1014 or litter on another’s property.” Id. at 519. First, it is not clear that Kling is on point. In Kling, plaintiffs primary claim was based on a lease dating from 1970. The lease ended in 1973, and the parties entered into a full “release of claims associated with the Well and any pit, tank battery, or other piece of equipment associated with the Well.” Id. at 512. The existence of a signed release is highly relevant, as the court held that the three year statute of limitations began to run from the date the release was signed.
To the extent that Kling is on point, I believe the Fifth Circuit is in error. This Court is the “ultimate arbiter of the meaning of the laws of this state.” Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582 (La.11/29/06), 943 So.2d 1037, 1045. Although we carefully consider federal district and appellate court decisions, we are not bound to follow them. Chittenden v. State Farm Mutual Auto. Ins. Co., 00-414 (La.5/15/01), 788 So.2d 1140, 1149 n. 21. I would disapprove of Kling in favor of the rule pronounced in Estate of Patout v. City of New Iberia, 01-0151 (La.App. 3 Cir. 4/3/02), 813 So.2d 1248, and Lopez v. House of Faith Non-Denomination Ministries, 09-1147 (La.App. 4 Cir. 1/13/10), 29 So.3d 680, and find the continued existence of noxious, unabated chemicals on or beneath a plaintiffs land constitutes a continuing tort, even if the conduct which originally caused the chemical contamination has ceased.
E. Jurisprudence Constante
This Court has applied a version of the continuing tort doctrine for over 125 years. In the case of Werges v. St. Louis, Chicago, and New Orleans R.R. Co., 35 La.Ann. 641 (1883), Justice Poché stated the basic test of a continuing tort: “when the injury is of a continuing nature, the cause of action continues and is renewed de die in diem,[7] as long as the cause of the continuing damage is allowed to continue.” Id. at 643, citing C.G. Addison, The Law of Torts, § 1361, p. 1163 (4th Ed. 1876). Five years earlier, the U.S. Supreme Court held, in a case of continuing nuisance by a fertilizer factory, “prescription, whatever the length of time, has no application. Every day’s continuance [of the nuisance] is a new of-fence.” Northern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 668-69, 24 L.Ed. 1036 (1878). Moreover, we have applied it in cases of chemical contamination onto immovable property for approximately eighty years. See Young v. International Paper Co., 179 La. 803, 155 So. 231 (La.1934) and Rhodes v. International Paper Co., 174 La. 49, 139 So. 755 (La.1932), discussed 114above. The doctrine has been applied time and again, and is due great deference as jurisprudence constante.
Once jurisprudence constante has been established, we should be “extremely reluctant to change our position.” Borel v. Young, 07-419 (La.7/1/08), 989 So.2d 42, 65. The policy behind this rule is simple, as the public should be able to expect a certain amount of stability and predictability from the decisions of this Court. Id.
Of course, jurisprudence constante is not inviolate. It is a secondary source of law. The primary sources of law are legislation and custom, and of these, legislation is supreme. Civ.Code arts. 1, 3. If the application of the continuing tort doctrine is to be amended, it should be done by legislative act. In In re Medical Review Panel for the Claim of Moses, 00-2643 *1015 (La.5/25/01), 788 So.2d 1173 (Ciaccio, J., pro tem.), we recognized that if the continuing tort doctrine were to be abrogated in medical malpractice claims, it would be done via legislative action.[8] Accord Randazzo v. State, 04-1503 (La.2/18/05), 894 So.2d 337 (Knoll, J., concurring in writ denial). In Randazzo, plaintiff discovered a forceps had been negligently left in his body nine years after surgery. The appellate court held his claim was prescribed, because the legislature had imposed a strict three year prescriptive period, even where the patient had walked around for nine years not knowing that a surgical instrument remained implanted in his abdomen. Randazzo v. State, 03-1470 (La.App. 1 Cir. 5/14/04), 879 So.2d 741, 743-44. Although I was (and still remain) concerned about the harshness of that result, I concurred with the writ denial in recognition of the principle that laws concerning “[s]tatutes of limitation are exclusively a legislative prerogative.” Randazzo, 894 So.2d at 337, citing Crier v. Whitecloud, 496 So.2d 305, 310 (La.1986). We should apply that same deference here. If our longheld jurisprudence constante regarding continuing torts is to be overturned, it may only be overturned by the legislature.
This Court should therefore affirm the district court’s denial of summary judgment and remand for further proceedings.

. The majority notes, without deciding, that plaintiffs' claim may sound in nuisance rather than trespass because defendants may have lacked the requisite intent to give rise to a trespass claim. (Opin. at n. 11). As the majority concedes, for the purposes of the continuing tort doctrine there is no meaningful distinction between a trespass claim and a nuisance claim. See, e.g., Young v. International Paper Co., 179 La. 803, 155 So. 231 (1934); Lopez v. House of Faith Non Denomination Ministries, 09-1147 (La.App. 4 Cir. 1/13/10), 29 So.3d 680.

. The Third Circuit first found the existence of a continuing tort at 97-1097 (La.App. 3 Cir. 3/06/98), 708 So.2d 526. This Court granted defendant’s writ and remanded at 98-0961 (La.07/07/99), 738 So.2d 544. The Third Circuit, applying the law of the case doctrine, again found the continuing tort doctrine applicable at 01-0151 (La.App. 3 Cir. 6/27/01), 791 So.2d 741. This Court again granted a writ and remanded with instructions to reconsider in light of Crump. 01-2211 (La.12/14/01), 803 So.2d 978. The Third Circuit's final opinion regarding prescription, again in favor of plaintiffs, was rendered at 01-0151 (La.App. 3 Cir. 4/3/02), 813 So.2d 1248. This Court denied writs. 02-1172 (La.6/21/02), 819 So.2d 335.

. Interestingly, the fact pattern in Cooper is basically the reverse of Cmmp. Crump involved a canal that dried up plaintiffs' waterfront property, Cooper involved a dam that flooded plaintiffs' land. In Crump, nothing actually entered onto plaintiff's land, while Cooper involved a "constant interference with [plaintiffs’] servitudes of drainage, causing the permanent flooding of their lands." Cooper, 870 So.2d at 323.

. See also Rhodes v. International Paper Co., 174 La. 49, 139 So. 755 (La.1932), another paper mill discharge case. In Rhodes, like Young, this Court held plaintiffs' claim was not prescribed because the waste water remained on the land. However, judgment was rendered for defendant on the rather improbable basis that the "sludge" was "of an alkaline nature, and should have been beneficial rather than deleterious.... The trees, so far as it appears, may have died from another cause.” Id. at 55, 139 So. 755. Bleach, for example, is also alkaline in nature, yet few arborists would agree it is "beneficial to plant life” as the Rhodes court seemed to believe.

. This is a questionable assumption. Presumably the newly installed telephone cables suffered corrosion from the gasoline, as did the original cables.

. See Middelkamp v. Bessemer Irrigating Ditch Co., 46 Colo. 102, 103 P. 280, 284 (Colo.1909), Hickman v. North Sterling Irrigation Dist., 748 P.2d 1349 (Colo.App.1987).

. Literally, “from day to day.” Ballentine’s Law Dictionary: Latin Phrases and Maxims, p. 110 (1916).

. Although the primary question presented in Moses was "whether the continuing tort doctrine can be invoked to enlarge the prescriptive period under La.Rev.Stat. 9:5628,” Id. at 1174, this Court did not resolve that issue because we found there was no continuing tort on the part of Ms. Moses' physician.