### CONNELL et al. v. INTERNATIONAL PAPER CO.

#### Civ. No. 1919.

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 10, 1951.

See also, D.C., 97 F.Supp. 440.

Lunn & Trichel, Shreveport, La., for plaintiffs.

Madison, Madison, Files & Shell, Bastrop, La., Tucker, Bronson & Martin, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

This is a suit for damages alleged to have been done to plaintiffs' plantation and livestock by the discharge of waste material commonly called "blackwater" from the paper mill of defendant at or near Springhill, Louisiana. Bodcaw Bayou rises in Southern Arkansas and flows in a generally southern direction through Bossier Parish, past the mill site, and on down some seventy-five or eighty miles to plaintiffs' property. Before reaching it, the waters divide into two channels; the first called the canal, passing through the approximate center; and the other known as Platt River, forming the eastern boundary. Defendant, in the process of making paper, consumes millions of gallons of water, which after recovering therefrom certain chemicals for repeated use, are impounded in large basins or lakes covering many sections of land. This large volume of liquid is ultimately discharged through controlled outlets into Bodcaw Bayou, usually beginning in the late fall or early winter, when the bayou is substantially full, the purpose being to have as much dilution for the mill waste as possible. The periods of discharge run from forty-five to sixty days usually, when pastures due to cold weather and frost are at a low ebb and the fishing season has substantially ended.

The damages claimed as due to the black water in these streams are: loss or depreciation in the market value of the land and improvements, injuries to livestock by loss of weight caused through drinking or the failure to drink the polluted water, reduced number of calves, additional expense for feed and care during the periods of discharge, the impairment of fishing of the plaintiffs, their tenants and friends, odors from the blackwater itself and dead fish, and inability to use it for household purposes.

The jury returned a general verdict of $19,680. Defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The first was denied, for reasons orally stated from the bench, but being convinced that the verdict was greatly excessive, the court gave plaintiffs the option of remitting within twenty days all within excess of $10,000, or a new trial would be granted on that ground. Plaintiffs seek a rehearing of this order as not justified by the record, and in the alternative request the court to interpret the effects of its ruling as to future damages. In defense of the jury's verdict, plaintiffs insist, of course, that it is fully supported by the evidence. However, after further careful consideration of the whole record and arguments, I am still of the view that the amount allowed was at least twice what it should have been. Plaintiffs urge that the court's action amounts to coercion in that they must enter the remittitur or go through another long and expensive trial, which they can ill afford. Unfortunately, this is true, in different degree, in every case where the court is convinced that plaintiffs are entitled to some recovery but that the amount allowed by the jury is excessive and arbitrary, as I believe the present verdict to be. There was no claim for damage to the soil or crops for agricultural purposes as such, but only for loss elements above enumerated. First as to damages to the real estate: Plaintiffs have a frontage, including 200 acres of rented land, on the two streams, of approximately six miles, and of course such portions of the property as are used for pasturage bordering thereon, undoubtedly have an advantage over other lands not so situated. Therefore, granting the plaintiffs' contention that during the periods of pollution above mentioned, the waters of these bayous are rendered unfit for stock and human use, can it be fairly said that it seriously affects the market value of the property? This court has held in this and other cases that the landowner is entitled to be compensated for any damage caused by the blackwater. In view of the time of the year and comparatively short periods of the flow, plus the right to compensation for such damages, any loss of market value is confined largely to the nuisance elements and the aggravation of litigation which the landowner prefers not to undergo. When it comes to placing a value in dollars and cents upon these elements, I do not believe the figures returned by the jury can be justified. It is generally known that the City of Monroe and the Town of Bastrop,

with their thousands of inhabitants, experience the peculiar odors of papermaking in the large mills near those places throughout the year when the wind is from their direction. However, if industry is to be permitted a reasonable chance to develop for the benefit of the whole community, some inconvenience must be endured by its inhabitants, with the right always to compensation for damages of any special or unreasonable type.

With respect to the claimed damages to the cattle, including impaired breeding, loss of water, additional expense of feeding, etc., the evidence certainly is not clear and conclusive as to what it amounted to, and the jury could with equal justification have found it insufficient to support plaintiffs' figures. There are thousands of acres of land in Bossier Parish of the same general character as plaintiffs', in close proximity to, but not bordering upon fresh-water streams like Bayou Bodcaw, yet the record is barren of proof, that for this reason alone, they are worth as much less than those having such frontage as the loss in acreage value claimed here. As a matter of fact, we have only the expression of opinions by both the lay and expert witnesses. Testimony of real estate brokers, as well as others, as to values not based upon actual sales of substantially similar properties in the vicinity, is necessarily the expression by each of his opinion, in which there is a wide variance, forcefully demonstrated in this very case. The most persuasive evidence is that of arms' length transactions between willing sellers and willing purchasers. Such of this kind as are proven here do not support plaintiffs' contention.

The court submitted to the jury, with what it believed to be proper instructions, the issue of whether there had been any permanent damage to the value of the real estate, along with the plea of prescription, as to when it became permanent. Their decision has necessarily put that question at rest, since such damage could occur, if at all, only once. As to future damages, I do not believe it possible for any court to say, in a case like this, whether future acts of defendant will cause recoverable damages or not. In the first place, the

Article of the Civil Code, 2315, still remains the law, and other articles lay down the rule between upper and lower proprietors. In a situation like this, where the property owner may engage in stockraising one year and general farming another, how is it possible to say in advance what the nature and extent of the injury will be? There are undoubtedly cases whose very nature is such that the particular business or operation of the property owner is destroyed entirely, and in which it is proper, in assessing permanent damages, to consider future earnings or profits as forecast by what happened in the past. The present is not such a case.

For the reasons stated, all motions for reconsideration are overruled.

The time for entering the remittitur was extended until five days after the filing and giving of notice by the Clerk of the Court's decision herein.