### RICOU
#### v.
### INTERNATIONAL PAPER CO.
#### Civ. No. 3905.

United States District Court,
W. D. Louisiana,
Shreveport Division.
Dec. 11, 1953.

Patrick W. Looney, Browne, Browne & Bodenheimer, Shreveport, La., for plaintiff.

Tucker, Bronson & Martin, Shreveport, La., Madison, Madison, Files & Shell, Bastrop, La., for defendant.

DAWKINS, Jr., Chief Judge.

Plaintiff owns 158 acres of land on Bodcau Bayou, an upland stream in Bossier Parish, Louisiana. Defendant operates a large pulp and paper mill in Webster Parish, Louisiana, located on the bayou about 15 miles above plaintiff's property. Defendant began its operations in 1938. Plaintiff acquired his property by donation in 1946.

During about 4 months each year, from about December 1st to April 1st, defendant discharges its waste, sometimes called "black water", from its impounding basins into the Bayou, under controlled conditions.

Plaintiff sued defendant, seeking a mandatory or prohibitory injunction. He also claimed damages for alleged losses in the sum of $16,450 on account of defendant's operations, claiming that the value of his property had been diminished permanently, that the future sale value had been and was being diminished, and that he was being deprived of income and the use of his property for camping purposes.

Defendant contended that it was operating a lawful business, employing thousands of people and has the right to use the stream, even if some inconvenience and annoyance was caused to downstream owners and that plaintiff, at most, had suffered only slight inconvenience; that its waste was not harmful and that it discharged into the stream in compliance with the laws of Louisiana and under regulations of the State authorities; that neither the present nor future value of plaintiff's land has been diminished and that he was not deprived of any use or income; that the condition of his camp house and improvements was due to neglect, and that if any damage was done to plaintiff it happened long before he acquired the property and before the period of prescription.

Against the damage claims defendant filed a Motion to Dismiss based upon a Plea of Prescription and for failure to state a claim upon which relief can be granted as to the injunction.

It also filed a Plea of Prescription of one year and a Plea of Prescription acquirendi causa on the ground that it had been operating and using a continuous apparent servitude for more than ten years prior to the filing of the suit.

The Plea of Prescription of one year was sustained by the Court and recovery limited to damages, if any, suffered during the period of one year prior to the filing of the suit on October 15, 1952. Evidence was admitted as to the occurrences before and after this period for whatever bearing they might have had upon the injunction phase of the case, and also as indicating conditions which might have existed during the

year in question. The Court gave proper instructions to the jury that it could award damages only if done within that year, and if it made any award for permanent damages they must have been shown to have occurred within that prescriptive period.

■ The Court did not sustain, but in effect overruled, defendant's claim of the acquisition of a servitude by the prescription acquirendi causa; and refused to charge the jury that defendant had acquired such a servitude.

Decision upon the injunction applications, both mandatory and prohibitory, was reserved to the Court and the jury was instructed that that decision would be made by the Court, leaving to the jury the question of whether the plaintiff had been damaged as claimed, the time the damage had occurred and the amount, if any, to be awarded.

At the close of plaintiff's case defendant filed a motion for involuntary dismissal on which the Court withheld judgment and at the close of all the evidence defendant filed a motion for a directed verdict, reiterating the matters set up in the motion for dismissal. Judgment was reserved except for the following:

■■ Defendant's motion to dismiss the claim for loss of rent and profits for fishing camps and commercial fishing was sustained on the basis of plaintiff's testimony that he and his ancestors in title had always refused to rent the land for those purposes and had no intention of doing so, and for the further reason that the evidence did not sustain plaintiff's contention. The Court also sustained the motion to dismiss on the claim for deterioration and decay of the camp house and improvements, because the evidence clearly showed that this was due solely to plaintiff's failure to make repairs and his unwillingness to spend money to maintain them. Plaintiff's remaining claims were submitted to the jury which found a verdict for the defendant, after only 12 minutes of deliberation.

On the matters reserved to the Court for decision on the injunction questions, the following findings of fact are made:

1. On the Mandatory Injunction.

Plaintiff's evidence on this point consisted of the testimony of an engineer as to a proposed plan to pipe the waste water to Red River and discharge it there instead of in Bodcau Bayou as has been done by the defendant since it began operations in 1938. He also presented the testimony of a high school science teacher, testifying as a chemist and biologist, who suggested various treatments and disposition of the waste. The engineer's testimony was based wholly upon a map measurement of the distance from the mill to the river and tables of costs from manuals used in the industry. He made no on-the-ground survey or even a visual inspection of the terrain and had no experience building pipe lines. Neither had he investigated the practicability of using Red River for drainage as against Bodcau Bayou except that he knew Red River was a larger stream. During his testimony he acknowledged an error of one-half million dollars in one of his calculations. The cheapest project he proposed would have cost two and a quarter million dollars, not including provision for storage or handling the water at Red River, and calling for continuous pumping operations without provision for standby or breakdown. Defendant's evidence showed it had investigated thoroughly the question of piping the water to Red River some years ago. Mr. Leo Odom, an expert engineer who has had long experience with the Corps of Engineers, was for several years Chief Engineer for the Louisiana Department of Public Works and has handled extensive large pipe line construction, estimated the cost at slightly more than five million dollars based on an actual survey and detailed estimate, with an annual operating cost of about one million dollars. Defendant also established that it was not practical, on account of terrain conditions, to pipe the water and discharge it in Red River, and

even if the expense were incurred no better system of operation would be provided. The problem would simply be shifted.

The evidence established that defendant was using one of the most modern methods used in the industry for the disposal of its waste. Many investigations had been made as the result of which it was considered that the present system was the best that could be devised. The overwhelming preponderance of evidence was in favor of defendant's contention that it had done no actual damage to plaintiff or his property and that its operation had caused no damage to the fish and fish life in Bodcau Bayou for more than five years prior to the date of the trial. The substantial weight of the evidence was to the effect that fishing in Bodcau Bayou was better now, and had been for several years, than before defendant's operation started. Plaintiff attempted to fix blame on defendant for a number of fish being killed in June and July of 1953, but the testimony of the State authorities who investigated the matter, and other experts, established that this was caused by natural conditions, defendant's operations being in no way involved or to blame.

Defendant also established the expenditure of a sum in excess of one and one-half million dollars on stream control and waste control in addition to a similar amount expended in improvements of its process, which also prevents damage to fish life.

Plaintiff's other witness, a high school science teacher with little or no practical experience, advanced various theories as to methods defendant could use to dispose of its waste and treat it differently from the process now used. A strong preponderance of the testimony, both technical and practical, showed that they had been tested and discarded as unworkable or so prohibitory in cost as to make their use impossible. This witness' evidence also was contradicted seriously by numerous other experts with more training and experience and by the facts as developed from practical witnesses.

### 2. On the Prohibitory Injunction.

Evidence offered by plaintiff was substantially as related above. Defendant's evidence was overwhelming to the effect that, at most, plaintiff had suffered only a slight inconvenience or annoyance. From plaintiff's own testimony it is clear that any damage he might have suffered was readily and quickly compensable in money. Defendant's evidence further showed that it employs approximately 2,500 men, with an annual payroll of approximately $11,000,000, in its mill. It also furnishes employment to approximately 3,000 employees engaged in supplying wood and other raw materials, in addition to large sums spent for freight, taxes, gas and other similar expenses which provide substantial income and revenue to the area. There is no dispute that defendant is operating a lawful business and is permitted to do so under the laws of Louisiana.

Defendant's evidence preponderates that there is no more practical or better method of disposing of its waste. To deprive it of its use of Bodcau Bayou for waste disposal would result in closing its plant and throwing out of employment thousands of well paid employees, depriving the area of a very substantial revenue.

If the slight annoyance and inconvenience to plaintiff is balanced against the loss to defendant and the community which would result from its having to shut down its operations, the injunction must be denied. This is especially so since plaintiff can be fully compensated in money for any actual damage he may suffer and the equity process of the Court may not be used in such cases.

### Conclusions of Law.

1. Plea of Prescription of One Year.

The plea of prescription of one year filed by defendant is sustained as to all damages, if any, done to plaintiff except that occurring within the period of one year prior to October 15, 1952.

■ The issue of whether there was any permanent damage, or loss in value. in the property, and when it occurred, was submitted to the jury with proper instructions on the plea of prescription. The jury's decision necessarily has put that question at rest since such damage could occur, if at all, only once. Connell v. International Paper Co., D.C., 99 F. Supp. 699; LSA–C.C. Articles 3536–3537; Spyker v. International Paper Co., 173 La. 580, 138 So. 109; Young v. International Paper Co., 179 La. 803, 155 So. 231; Maddox v. International Paper Co., D.C., 105 F.Supp. 89, Affirmed, 5 Cir., 203 F.2d 88.

2. On the Application for a Mandatory Injunction.

■ Plaintiff's evidence on this point is, to say the least, inconclusive, and in itself would not justify the issuance of a mandatory injunction. Considering the overwhelming preponderance of evidence as to the methods used being the most modern and standard in the industry, and the evidence that no actual damage was done to the plaintiff, the Court finds that no basis is presented to justify the granting of a mandatory injunction. All of plaintiff's suggestions as to what defendant might be ordered to do were shown to be impractical, or to have been tried and found not workable, or to be so prohibitive in cost in proportion to the benefits that might be obtained, that the Court would not be justified in granting a mandatory injunction. Mandatory injunctions are rarely issued and never except upon the clearest equitable grounds. Such grounds are not found in the evidence presented here. O'Malley v. Chrysler Corporation, 7 Cir., 160 F.2d 35; 43 C.J.S., Injunctions, § 5; 28 Am.Jur. Injunctions, Section 20; High on Injunctions, 3rd Ed., Sec. 2.

3. On the Application for a Prohibitory Injunction.

As stated on the application for a mandatory injunction, plaintiff's evidence on his right to a prohibitory injunction is inconclusive, and standing alone would not justify the granting of an injunction causing a tremendous loss to the defendant and to the community. Considering defendant's evidence, the conclusion is inescapable that plaintiff's damage, if any, was relatively minor and could be compensated fully in money. In addition, defendant urged that plaintiff had suffered no burden which he was not required to bear as a lower riparian proprietor and the preponderance of evidence supported defendant's contention. This conclusion is supported by the jury's verdict for defendant on the question of damages.

The evidence does not present a situation in which the Court would be justified in using its equity powers to enjoin the defendant.

The matter has been passed on by this Court in earlier cases involving the same defendant and the injunction uniformly has been denied. Maddox v. International Paper Co., D.C., 47 F.Supp. 829; Maddox v. International Paper Co., D.C., 105 F.Supp. 89; Affirmed, 5 Cir., 203 F.2d 88; Busby v. International Paper Co., D.C., 95 F.Supp. 596.

As stated in 28 Am.Jur., par. 37, p. 233:

"The applicable rule, reaffirmed in almost every case dealing with the matter, is that in the absence of some positive provision of the law to the contrary, an injunction will not be granted in cases where there is a choice between the ordinary processes of law and the extraordinary remedy of injunction, and the remedy at law is sufficient to furnish the injured party full relief to which he is entitled in the circumstances."

See also Minden Syrup Company v. Applegate, La.App., 150 So. 421; Texas Co. v. Grosjean, D.C., 16 F.Supp. 264; Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447.

In addition, Louisiana has adopted the Balance of Convenience Rule. Under this rule the injunction clearly should be denied. Young v. International Paper Co., 179 La. 803, 155 So. 231.

The jury having found a verdict for the defendant, it becomes unnecessary to pass upon the other issues raised in the motion to dismiss and the motion for a directed verdict.

Therefore, the plaintiff's application and prayer for a mandatory injunction and for a prohibitory injunction are denied; and the jury having found a verdict for the defendant, plaintiff's demands are rejected in toto, at his cost.

A proper decree will be presented.