# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-1012

KINDER GAS, INC.

VERSUS

GERALD B. REYNOLDS
AND MARY J. KAUFFMANN

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2010-122, DIVISION "A"
HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED.

Donald D. Akers, Jr.
Gibbens & Stevens
222 W. St. Peter Street
New Iberia, LA 70560
(337) 367-8451
COUNSEL FOR DEFENDANTS/PLAINTIFFS IN
RECONVENTION/APPELLANTS:
    Gerald B. Reynolds, Robin Reynolds Lipari,
    Nancy Reynolds Landry, and Mary J. Kaufmann

**Gladstone N. Jones, III**
**Eberhard D. Garrison**
**Kevin E. Huddell**
**H.S. Bartlett III**
**Andrew Jacoby**
**Jones, Swanson, Huddell & Garrison, LLC**
**601 Poydras Street, Suite 2655**
**New Orleans, LA 70130**
**(504) 523-2500**
**COUNSEL FOR DEFENDANTS/PLAINTIFFS IN**
**RECONVENTION/APPELLANTS:**
> **Gerald B. Reynolds, Robin Reynolds Lipari,**
> **Nancy Reynolds Landry, and Mary J. Kaufmann**

**W. Jay Luneau**
**Luneau Law Office**
**1239 Jackson Street**
**Alexandria, LA 71301-6900**
**(318) 767-1161**
**COUNSEL FOR DEFENDANTS/PLAINTIFFS IN**
**RECONVENTION/APPELLANTS:**
> **Gerald B. Reynolds, Robin Reynolds Lipari,**
> **Nancy Reynolds Landry, and Mary J. Kaufmann**

**Craig Ray Hill**
**Jones & Hill**
**Post Office Box 1260**
**Oberlin, LA 70655**
**(337) 639-2127**
**COUNSEL FOR PLAINTIFF/DEFENDANT IN**
**RECONVENTION/APPELLEE:**
> **Kinder Gas, Inc.**

**Morgan J. Well, Jr.**
**Lee M. Peacocke**
**Larzelere Picou Wells Simpson Lonero, LLC**
**3850 N. Causeway Blvd., Suite 1100 – Two Lakeway Center**
**Metairie, LA 70002**
**(504) 834-6500**
**COUNSEL FOR PLAINTIFF/DEFENDANT IN**
**RECONVENTION/APPELLEE:**
> **Kinder Gas, Inc.**

**Paul J. Tellarico**
**Neblett, Beard & Arsenault**
**Post Office Box 1190**
**Alexandria, LA 71309-1190**
**(318) 487-9874**
**COUNSEL FOR DEFENDANT IN**
**RECONVENTION/APPELLEE:**
> **Hunt Dominion Corporation**

**Joseph Ralph White**
**Stella C.C. Shackelford**
**Sharon L. Andrews**
**The White Law Firm**
**650 Poydras Street, Suite 2319**
**New Orleans, LA 70130**
**(504) 799-2585**
**COUNSEL FOR DEFENDANT IN**
**RECONVENTION/APPELLEE:**
     **Hunt Dominion Corporation**

**Matthew J. Randazzo, III**
**Christopher B. Bailey**
**Demarcus J. Gordon**
**Gordon, Arata, McCollam, Duplantis & Eagan, LLC**
**201 St. Charles Ave., 40th Floor**
**New Orleans, LA 70170-4000**
**(504) 582-1111**
**COUNSEL FOR DEFENDANT IN**
**RECONVENTION/APPELLEE:**
     **Rosewood Resources, Inc.**

**Stuart T. Welch**
**Joe B. Norman**
**Joseph I. Giarrusso III**
**Katherine Seegers Roth**
**Elisabeth Lorio Baer**
**Liskow & Lewis, APLC**
**One Shell Square**
**701 Poydras Street, Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**COUNSEL FOR DEFENDANT IN**
**RECONVENTION/APPELLEE:**
       **XH, LLC**

**GENOVESE, Judge.**

In this property contamination case, the landowners appeal the trial court's grant of the exceptions of prescription and prematurity filed on behalf of the oil, gas, and mineral lessees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Oliver B. Reynolds and Hunt Petroleum Corporation (Hunt Petroleum) entered into a surface lease on August 27, 1960, involving fifteen acres of property in Kinder, Louisiana. Upon the death of Mr. Reynolds, his children, Gerald B. Reynolds and Mary J. Kaufmann,[1] succeeded him as the landowners and lessors of the property. Gerald B. Reynolds subsequently made a donation of a portion of his ownership interest in the property to his two daughters, Robin Reynolds Lipari and Nancy Reynolds Landry. Additionally, Hunt Petroleum was succeeded as lessee of the property by Hunt Dominion Corporation, Rosewood Resources, Inc., and XH, LLC (collectively, the Hunt entities), which entities later sold their interest in the lease to Kinder Gas Processing Corporation. Kinder Gas Processing Corporation, in turn, transferred its interest to Kinder Gas, Inc. (Kinder Gas), the Plaintiff and Defendant in Reconvention in the instant matter.

In March of 2010, Kinder Gas filed a Petition for Declaratory Judgment, seeking a declaration of "its rights, status and legal remedies" relative to the lease, naming as Defendants, Gerald B. Reynolds and Mary J. Kaufmann. In addition to other relief sought therein, Kinder Gas sought declaratory relief in the form of:

> a judgment declaring that [P]laintiff/lessee shall not be liable unto lessor for any damage caused by lessee's operation on said leased property and further that lessee shall not be required to do any work regarding restoring the leased premises to a condition other than that condition in which the property is at at the time of termination and after removal of such instillations therefrom pursuant to the contract.

---

[1] Though Defendant's name is listed as "Kauffmann" in the caption of these proceedings, this court notes that the spelling given in the Answer and Reconventional Demand filed on her behalf is "Kaufmann."

On March 25, 2010, Gerald B. Reynolds and Mary J. Kaufmann filed an Answer and Reconventional Demand asserting that the subject "[l]ease has been cancelled as a result of [P]laintiff's breaches thereof." Joining as Plaintiffs in Reconvention were Nancy Reynolds Landry and Robin Reynolds Lipari [2] (collectively, the Reynolds Family). Named as Defendants in Reconvention were XTO Energy, Inc., the Hunt entities,[3] and Kinder Gas (collectively, the Gas Company Defendants).[4] That pleading alleges, in relevant part:

> Over the past sixty years[,] the Gas Company Defendants have constructed and operated various facilities on the property, including a main absorber, rich oil de-ethanizer, depropanizer, debutanizer, still, recompression-refrigeration units, storage tanks, truck loading facilities, and gas dehydrators.
>
> . . . .

7.

> The Reynolds Family seeks judgment against Kinder Gas, Inc. and the other Gas Company Defendants finding them liable for all damages to the property.

8.

> The Reynolds Family's property has been damaged by the Gas Company Defendants' gas processing operations and by the spillage and/or disposal of toxic wastes on, in, and adjacent to the Reynolds Family's property. This spillage and/or disposal, which has not been removed, occurred without [t]he Reynolds Family's consent.

---

[2]The record contains some apparent procedural errors which were not raised in the trial court and are not relevant for purposes of this appeal. For example, although these individuals were not named as defendants in the Petition for Declaratory Judgment, they became parties to the litigation by initially appearing as Plaintiffs in Reconvention in the Answer and Reconventional Demand. We simply note same for the purpose of clarity in our identification of the parties.

[3] Again, for purposes of clarity in this opinion, we note that these entities were initially brought into the litigation as Defendants in Reconvention; however, this too is a procedural error, as these claims should have been instituted via third party demands.

[4] The Reconventional Demand asserts that "[t]he Gas Company Defendants are lessees, assigns, joint venturers, and/or interest owners of the Lease Agreement, and are liable jointly and solidarily for all damages claimed herein." The claims against XTO Energy, Inc. were subsequently dismissed without prejudice.

2

9.

> The Gas Company Defendants knew or should have known that their day-to-day operations on the property would cause the soil, surface waters, and groundwater of the Reynolds Family's property to be contaminated with the hazardous and toxic substances. The Gas Company Defendants' failure to timely remove or remediate this toxic pollution in the soils and groundwater of the Reynolds Family's property has allowed the pollution to migrate and spread, thereby causing damages, including but not limited to contaminated soil and groundwater.

The Reynolds Family alleged that the Gas Company Defendants are liable in tort for the damages that their actions caused under a theory of strict liability and that their actions "created a continuing, ongoing and damaging nuisance to the Reynolds Family and their property. Further, the continued presence of wastes on the Reynolds Family's lands constitutes a continuing trespass." In addition to the tort claims asserted, the Reynolds Family alleged that the conduct of the Gas Company Defendants "constitutes a breach of the [l]ease" and has also breached "those standards imposed by the Louisiana Civil Code governing the conduct of prudent lessees."

In response to the reconventional demand, the Gas Company Defendants plead various defenses, exceptions, and motions for summary judgment. Particularly, and relevant to the present appeal, the Gas Company Defendants filed exceptions of prescription relative to the tort claims asserted by the Reynolds Family and exceptions of prematurity relative to the breach of contract claims. Following a hearing on these exceptions, the trial court entered a judgment on May 31, 2011, dismissing the Reynolds Family's tort claims as prescribed, dismissing the Reynolds Family's contract claims as premature, and denying all other exceptions and motions for summary judgment as moot. The Reynolds Family appeals.

## ASSIGNMENTS OF ERROR

The Reynolds Family presents the following assignments of error for our review:

1. The district court erred in granting the [G]as [C]ompany [D]efendants' exception[s] of prescription as to the Reynolds [F]amily's tort claims on its finding that the Reynolds [F]amily had "requisite knowledge of *possible* contamination on or before January 14, 2008,"[ ] when there is no evidence that the Reynolds [F]amily had actual or constructive knowledge of *actual* or *appreciable* damages prior to the filing of [Kinder Gas's] declaratory judgment action in March 2010.

2. The district court erred in granting the [G]as [C]ompany [D]efendants' exception[s] of prematurity as to the Reynolds [F]amily's contract claims on finding that the surface lease was still in effect[,] and Kinder [Gas] still had ongoing operations at the facility,[ ] when the Supreme Court's *Marin* [*v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So.3d 234,] decision holds that the Civil Code does not bar claims for damages while a lease is ongoing.

## LAW AND DISCUSSION

### *Exceptions of Prescription-Tort Claims*

> When "evidence is introduced at the hearing on [a] peremptory exception of prescription, the [trial] court's findings of fact are reviewed under the manifest error-clearly wrong standard of review." *Carter v. Haygood*, 04-646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. "If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.*

*McCain v. Cassidy*, 11-124, p. 2 (La.App. 3 Cir. 6/8/11), 68 So.3d 631, 634. In the instant matter, evidence was introduced at the hearing on the exceptions of prescription. Therefore, we must decide if the trial court was manifestly erroneous or clearly wrong in its determination that the Reynolds Family's tort claims had prescribed.

The trial court's grant of the exceptions of prescription dismissed the Reynolds Family's tort claims. "Delictual actions are subject to a liberative prescription of one year." La.Civ.Code art. 3492. Additionally, "[w]hen damage

4

is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La.Civ.Code art. 3493. The issue presented in the instant matter is: When did that prescriptive period commence? As set forth by our supreme court, "[s]pecifically regarding property damage claims, knowledge sufficient to start the running of prescription 'is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things.'" *Marin*, 48 So.3d at 246 (quoting *Young v. Int'l Paper Co.*, 155 So. 231 (La.1934)).

Having considered the evidence adduced in this matter, and the relevant jurisprudence, the trial court provided the following as the basis for its decision (footnote omitted):

> A review of the evidence in this matter makes clear that [Defendants/Plaintiffs in Reconvention] had the requisite knowledge of possible contamination on or before January 14, 2008, at the very latest.
>
> Applying the holdings of *Marin v. Exxon Mobil Corp.*, [09-2368 (La. 10/19/10), 48 So.3d 234,] and *Hogg v. Chevron USA, Inc.*, [09-2632 (La. 7/6/10), 45 So.3d 991,] to this matter, the [Defendants/Plaintiffs in Reconvention] were required to file their tort action within one year of said date. Because they did not, and because the [c]ourt finds that the doctrine of *contra non valentem* does not apply in this matter, the [c]ourt is required to sustain the exceptions of prescription relative to the tort claims asserted herein.
>
> Accordingly, the tort claims asserted herein by [Defendants/Plaintiffs in Reconvention] must be dismissed, as prescribed.

The date of January 14, 2008, relied upon by the trial court as the commencement of the prescriptive period, is the date a real estate appraiser, Leonard Pauley, who was retained by the Reynolds Family, extended an offer to Kinder Gas for its purchase of the property subject to the lease. This

correspondence, sent in the course of years of ongoing negotiations for the purchase of the property, reads, in pertinent part, as follows:

> I have been advised that some environmental problems may be centered on the site. The problem[,] if any[,] has been created by your company and/or your predecessors. Due to the potential liability for the family and the apparent lack of consideration to the family regarding the appropriate value/lease relationship until now when this lease is almost up, we have decided to offer two options to you. They are as follows:
>
> The family owns approximately 26 acres in all. The only consideration the family will give at this juncture is a total sale or a lease of the entire track.
>
> 1. Sell the property. The selling price will be based on $44,000.00 per acre, or $44,000.00 x 26 acres = $1,144,000.00.
>
> 2. Lease the property. The lease would be based on 1% per month of $44,000.00 per acre x 26 acres = $11,440.00 per month x 12 = $137, 280.00 per year. This would be a Triple Net Lease. The lease would contain a CPI clause adjusting the rental amount every 5 years with the lease never reducing below the primary term payments. The lease will be paid monthly. The value would be readjusted based on the Market Value Estimate every 10 years, or the primary term payments, which ever [sic] is higher.
>
> We intend to either resolve this matter with you, or we are going to have Dr. John Bruza's office with the USACE to conduct a complete investigation to insure that my clients are not faced with any unknown environmental problems. They will assist us at no cost to my clients.

Undisputedly, the Reynolds Family has been aware of surface oil stains on their property since 2003. They admit in brief to this court that Mary J. Kaufmann had personally seen "a few surface oil stains in one isolated portion of the property," which observation lead to "the spector of contamination as a bargaining ploy in unsuccessful property sale negotiations." However, they argue that they "had no knowledge that there may be something other than the insignificant surface oil stains until Kinder [Gas] filed the underlying declaratory judgment action in this case in 2010[.]" The Reynolds Family argues that "[a] review of the

6

full string of sporadic correspondence reveals the context of that letter to be part of an exchange of negotiating positions by the lessors and lessees regarding the value of their property proposals, not a substantive discussion of actual knowledge of actual contamination." We agree that the substance of the January 14, 2008 letter must be viewed against the backdrop of what had transpired prior thereto in order to ascertain the extent of their knowledge, actual or constructive.

At the hearing on the exceptions of prescription, testimony and evidence was introduced establishing a time-line of the negotiations between the parties and the information relative to any contamination of the property that was discussed throughout. What follows is a brief summary thereof:

**1997**

The president of Kinder Gas, Thomas Manning, met with Gerald B. Reynolds and "discussed several things," including the existence of a Phase Two environmental study "that showed a few things that [Kinder Gas] wanted to clean up" and that it was "in the process of cleaning them up." Subsequently, discussions began for a potential purchase of the portion of the Reynolds Family property that Kinder Gas's facility was located on.

**2000**

(1) Thomas Manning, on behalf of Kinder Gas, forwarded correspondence expressing the desire of Kinder Gas to purchase six acres of the property for $6,000. If so, "the remainder of the lease would be cancelled and both parties freed of its obligations." One specific "term and condition[] of the proposed transaction would be" for "[b]oth parties [to] release and hold each other harmless for any

7

damages occurring to their respective lands prior to the purchase date."

(2)  The attorney for Kinder Gas stated in communication to Mr. Ed Mouser, the attorney for the Reynolds Family, that he was proposing "a very lucrative offer" to purchase the property.  Therein he explained that "[u]nder both the lease and environmental statutes [the Reynolds Family] would owe a fortune in clean[-]up costs once [Kinder Gas's] lease was terminated."  However, "[w]ith this proposal, [the Reynolds Family] would be alleviated from the liability associated with environmental clean[-]up."

**2003**

(1)  Kinder Gas, via correspondence with Mary J. Kaufmann, referenced "one or two preliminary discussions in the past about [its] purchasing approximately six acres of land ([their] plant site) out of the fifteen acres covered by the lease."  It was proposed that, if the purchase was accomplished, "both parties would then release the other from the terms of the lease and the approximately nine acres not purchased would revert back to" the Reynolds Family.

(2)  Mary J. Kaufmann personally "observed rusted equipment and a few small spots of soil that appeared to be oily adjacent to the side of the road and the fence[,]" and she "speculated that there might be spots of oily soil near the flare area which is located outside of the fenced boundary."

(3)  Mary J. Kaufmann responded to the proposed purchase by Kinder Gas stating that the Reynolds Family was unwilling to sell a six acre portion of the property.  Her counter proposal was for Kinder Gas to

purchase ten of the fifteen acres, to include the five-six acres of property that were currently fenced in, and, in addition thereto, the acreage south of the fenced acreage that "ENCOMPASS[ED] THE ORIGINAL GAS FLARE AND/OR LOCATION OF THE HYDROCARBON CONTAMINATION." That correspondence further conditioned the sale upon the Kinder Gas's "AGREEMENT TO ASSUME RESPONSIBILITY FOR CLEAN-UP AS MANDATED BY *LA. D. E. Q.* AND/OR FEDERAL *E.P.A.* RULES."

**2007**

Kinder Gas extended an offer to purchase ten acres of the property and proposed that two appraisals be done on the property which "would not include any equipment or any damage of contamination[,] but would be only the value of the land itself."

**2008**

Leonard Pauley, Jr., having performed an appraisal of the property at the request of the Reynolds Family, directed a proposal to Kinder Gas for the sale or lease of the entire tract. For the entire twenty-six acre tract, the selling price was $44,000.00 per acre, for a total of $1,144,000.00. Alternatively, the lease price demanded was $11,440.00 per month, or an annual lease price of $137,280.00. Within his correspondence, Mr. Pauley stated that he had "been advised that some environmental problems may be centered on the site." Mr. Pauley's correspondence concludes, stating: "We intend to either resolve this matter with you, or we are going to have Dr. John Bruza's office with the USACE to conduct a complete investigation to

insure that my clients are not faced with any unknown environmental problems."

**2009**

As the fifty-years of renewal of the 1960 surface lease was approaching its end, Kinder Gas gave notice to the Reynolds Family of its intent to extend the lease for a period of two years, during which extension it would, among other things, "[c]lean up any environmental condition <u>required</u> by the Louisiana Department of Environmental Quality." Alternatively, Kinder Gas indicated that it would consider a purchase of the portion of the property it was currently using.

In connection with the foregoing evidence, the parties argued in the trial court, as they do on appeal, the application of the law of prescription relating specifically to property contamination cases as set forth by our supreme court in *Marin*, 48 So.3d 234, and *Hogg*, 45 So.3d 991. Relying on the January 14, 2008 correspondence quoted above, the trial court held that the knowledge was sufficient to commence the prescriptive period under the dictates of *Marin* and *Hogg*. However, quoting the language of *Marin*, as to "actual or constructive knowledge of actual or appreciable damages," the Reynolds Family maintains that "there is no evidence that the Reynolds [F]amily had actual or constructive knowledge of actual or appreciable damages prior to the filing of [Kinder Gas's] declaratory judgment action in March 2010. To the contrary, it is their contention that "the only contamination about which the record here shows that the Reynolds [F]amily had actual or constructive knowledge is minor oil stains on the surface soil[.]" We disagree.

10

The record is clear that dating as far back as the initial meeting between Thomas Manning and Gerald B. Reynolds in 1997, there was some discussion of contamination. According to the testimony of Mr. Manning, the Phase II Environmental Site Assessment was discussed, at least to some degree. From that time forward, contamination of the property was discussed on numerous occasions during the course of negotiations for the sale of the property. Indeed, there were repeated acknowledgments of contamination which was used by the Reynolds Family in their effort to obtain a significantly higher price for the property from Kinder Gas. These negotiations culminated with the January 14, 2008 letter relied upon by the trial court as evidence of "the requisite knowledge of possible contamination." The knowledge of contamination, as repeatedly evidenced in the correspondence, triggered a duty to investigate the potential damage to the property and the legal requisite of filing suit within one year of acquiring that knowledge. This conclusion is wholly supported by our supreme court's decisions in *Marin* and *Hogg*.

*Contra Non Valentem*

In an effort to avoid the dismissal of its tort claims, the Reynolds Family also argues that the doctrine of *contra non valentem* should have been applied, resulting in the interruption or suspension of the prescriptive period. Specifically, of the four categories of *contra non valentem* discussed by the court in *Marin*, they contend that the following are relevant in this case: "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or . . . where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant." The argument relative to *contra non valentem* raised by the Reynolds Family is that the Gas Company Defendants "withheld information" as to the

11

severity of the contamination and that they assured the Reynolds Family that it "was being cleaned up." We disagree with the Reynolds Family's contention that the doctrine of *contra non valentem* should apply in this case.

The record is void of any evidence that the Reynolds Family was prevented "from availing [itself] of [its] cause of action." In fact, there was nothing preventing them from asserting a cause of action in tort as early as January 1998, or earlier. Instead, they elected to continue to negotiate for the sale of the property and use the contamination as a bargaining tool in the negotiations. Additionally, for the extensive reasons set forth above, the record establishes that the Reynolds Family had knowledge of the existence of contamination; thus, "the cause of action[,]" was "known" or "reasonably knowable" by January 1998, at the very latest.

Based upon the foregoing, we find that a reasonable factual basis exists in the record to support the trial court's finding. Thus, we find that the trial court was not manifestly erroneous or clearly wrong in its determination. We, therefore, affirm the trial court's grant of the exceptions of prescription on behalf of the Gas Company Defendants dismissing the tort claims asserted by the Reynolds Family.

### Exceptions of Prematurity – Contractual Claims

> Louisiana Code of Civil Procedure [A]rticle 926(A)(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action rather than defeat it. La.Code Civ. P. arts. 923 and 926. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. La.Code Civ. P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. *Houghton v. Our Lady of the Lake Hosp. Inc.*, 03-0135, p. 5 (La.App. 1 Cir. 7/16/03), 859 So.2d 103, 106. Evidence may be introduced to support or controvert the exception, when the grounds do not appear from the petition. La.Code Civ. P. art. 930. The objection of prematurity raises the issue of whether the juridical cause of action has yet come into existence because some prerequisite condition has not been fulfilled. *Bridges v. Smith*, 01-2166, p. 4 (La.App. 1 Cir. 9/27/02), 832 So.2d 307, 310, *writ*

12

*denied*, 02-2951 (La.2/14/03), 836 So.2d 121. The objection contemplates that the action was brought prior to some procedure or assigned time, and is usually utilized in cases where the applicable law or contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. *Plaisance v. Davis*, 03-0767, p. 6 (La.App. 1 Cir. 11/7/03), 868 So.2d 711, 716, *writ denied*, 03-3362 (La.2/13/04), 867 So.2d 699.

*Harris v. Metro. Life Ins. Co.*, 09-34, pp. 10-11 (La.App. 1 Cir. 2/5/10), 35 So.3d 266, 274. "Prematurity is determined by the facts existing at the time the lawsuit is filed." *White v. St. Elizabeth B.C. Bd. of Dirs.*, 43,329, p. 3 (La.App. 2 Cir. 6/4/08), 986 So.2d 202, 204-05, *writ denied*, 08-1440 (La. 10/10/08), 993 So.2d 1284 (citing *Plaisance*, 868 So.2d 711). Finally, "[w]e review a trial court's denial of an exception of prematurity under the manifest error standard." *Granger v. Granger*, 11-77, p. 4 (La.App. 3 Cir. 6/15/11), 69 So.3d 666, 669, *writ denied*, 11-1882 (La. 9/16/11), 69 So.3d 1152 (citing *Pinegar v. Harris*, 08-1112 (La.App. 1 Cir. 6/12/09), 20 So.3d 1081).

Following the hearing on the exceptions of prematurity, the trial court held as follows:

> The Reconventional Demand, filed March 25, 2011, also asserts contract claims for damages arising under the subject lease. At that time, the subject lease was in effect and the lessee, Kinder Gas, Inc., had [ongoing] operations upon the subject property.
>
> A suit is premature if it is brought before the right to enforce the claim sued upon has accrued. La.[Code Civ.]P. art. 423. Prematurity is determined by the facts existing at the time a suit is filed. *Sevier v. U.S. Fidelity & Guar. Co.*, 497 So.2d 1380; *Brister v. Southwest Louisiana Hosp. Ass'n*, 624 So.2d 970 (La.App. 3d Cir. 1993).
>
> A review of the Reconventional Demand, and particularly its prayer, reveals that the claims asserted by [Plaintiffs in Reconvention] are contract claims involving the corporations' purported obligation to restore the land on which the operations are [ongoing]. Therefore, applying the holding of *Dore Energy Company v. Carter-Langham, Inc., et al*[.], 901 So.2d 1238 (La.App. 3d Cir. 2005) to this matter, the [R]econventional

[D]emand as it relates to contract claims must be dismissed, without prejudice, as premature.

With respect to their contractual claims, the Reynolds Family asserts that the trial court's reliance on *Dore Energy Company*, 901 So.2d 1238, is misplaced since, "[i]n *Dore*, the breach of lease claims were brought solely under the Mineral Code with regard to claims brought on a mineral lease, and specifically related to claims for restoration of the land." Whereas, "[h]ere, the Reynolds [F]amily's claims arise under a surface lease and are subject to the broader obligations in the Civil Code discussed by the [supreme court in] *Marin*[.]" The Reynolds Family concludes, therefore, that *Marin* does not preclude the present claims brought pursuant to the terms on an ongoing surface lease based on prematurity.

Undisputedly, in the instant matter, at the time the reconventional demand was filed, the lease was in effect. Our supreme court, in *Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686, held that the duty to restore leased property does not arise until the expiration of the lease. This court reached the same conclusion in *Dore*, recognizing that certain claims may be asserted during the existence of a lease; however, following *Corbello*, we held that claims involving obligations to restore the land on which operations are ongoing are premature. *Marin* does not change this result.

For the foregoing reasons, we cannot say that the trial court was manifestly erroneous or clearly wrong. We, therefore, affirm the trial court's grant of the exceptions of prematurity and the dismissal, without prejudice, of the contractual claims asserted by the Reynolds Family.

## DECREE

For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Gerald B. Reynolds, Robin Reynolds Lipari, Nancy Reynolds Landry, and Mary J. Kaufmann.

**AFFIRMED.**